511 F.2d 1270
 167 U.S.App.D.C. 268
 Wallace Russell CHILDS, Jr., et al.
v.
UNITED STATES BOARD OF PAROLE, Appellant.
James ALLEN
v.
UNITED STATES BOARD OF PAROLE, Appellant.
Willie C. COCHRAN
v.
UNITED STATES BOARD OF PAROLE et al., Appellants.
James E. EATON
v.
UNITED STATES of America et al., Appellants.
John T. SWEENEY
v.
UNITED STATES BOARD OF PAROLE, Appellant.
William HEWLETT
v.
UNITED STATES BOARD OF PAROLE, Appellant.
Nicholas POTERE
v.
UNITED STATES BOARD OF PAROLE, Appellant.
 Nos. 74--1052 to 74--1142 and 74--1274 to 74--1279.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued June 5, 1974.
Decided Dec. 19, 1974.
 
 Joseph S. Davies, Jr., Atty., Dept. of Justice, with whom Earl J. Silbert, U.S. Atty., was on the brief, for appellant. John A. Terry and Robert M. Werdig, Asst. U.S. Attys., also entered appearances for appellant in Nos. 74--1274--74--1279.
 Steven Brodsky, Washington, D.C. (appointed by this court), for appellees. Robert L. Weinberg, Washington, D.C., also entered an appearance for appellees.
 Before FAHY, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.
 FAHY, Senior Circuit Judge:
 
 
 1
 The appeal is by the United States Board of Parole, one of the defendants in the District Court, from parts of an order of the court of October 1, 1973, 371 F.Supp. 1246. The appellees include the original plaintiff Childs, intervenor plaintiffs, and plaintiffs whose suits, on motions of the appellant Board, were consolidated with the original suit. All appellees, now over 90 in number, are federal prisoners whose applications for parole have been denied, allegedly in violation of their respective rights to due process of law.
 
 
 2
 Jurisdiction was pleaded in the District Court by virtue of 28 U.S.C. §§ 1361, 1391 and 2201; and the complaints sought both declaratory and injunctive relief in the nature of mandamus. The proceedings in the District Court, after a hearing there, resulted in the order granting relief in the following terms:
 
 
 3
 1. Defendants (appellants) must provide narrative written statements of reasons based upon salient facts or factors in each case to all prisoners whose applications for parole are acted upon and not granted commencing no later than 90 days hence.
 
 
 4
 2. Defendants are to submit to the court within 60 days proposed regulations governing access by a prisoner to the information which will be before the Board and the submission of responses on behalf of parole applicants, and
 
 
 5
 3. Defendants are to submit to the court within 60 days proposed procedures for conveying to prisoners reasonably comprehensive explanatory guidance as to the criteria to be considered in passing upon applications for parole.[1]
 
 
 6
 The Board has not appealed from paragraph 3 of the order because shortly after the court's decision the Board promulgated and began to implement new guidelines on a regional basis, and these guidelines were submitted to the trial court as required by paragraph 3.
 
 
 7
 Thereafter, on October 17, 1973, the District Judge issued his findings of fact in support of his previously-entered order. They are set forth in the Appendix to this opinion. They include a finding that since the Board does not provide on a routine basis written narrative statements of reasons for not granting parole, 'there exists a substantial danger that a significant number of decisions not to grant parole are made without reasoned consideration of the relevant facts and factors in each case, and are, therefore, arbitrary and capricious.'
 
 
 8
 The litigation had originated in the District Court on an inartistic petition to show cause filed May 27, 1970, by Childs, a federal prisoner, pro se. This was followed by an amended complaint filed by his court-appointed counsel prior to the hearing in the District Court, to allege a class action claim on behalf of Childs and 'all those similarly situated, namely, all federal prisoners who are or will become eligible for parole. . . .'On August 13, 1971, an order was entered by the court, the recitals of which will appear subsequently, that the action shall be maintained 'as a class action, the class being all federal prisoners who are eligible for consideration for parole under the terms of 18 U.S.C. § 4203.' On the same day Childs and the intervenor plaintiffs filed an amended class action complaint.
 
 
 9
 With the foregoing brief opening we take up now the several questions to be decided before reaching the merits.
 
 I. THE QUESTION OF JURISDICTION
 
 10
 In its Reply Brief appellant raises for the first time a question of jurisdiction.[2] It is stated as follows: 'The Only Basis for Subject Matter Jurisdiction Alleged in the Complaint is Mandamus (28 U.S.C. 1361) and That Action Does Not Permit the Relief Prayed for or Granted by the District Court.' In support of this contention appellant points out that section 2201, also asserted as a basis for jurisdiction, does not grant subject matter jurisdiction, being available only to provide a remedy where another basis for jurisdiction pertains, and that section 1361, the mandamus statute, did not confer jurisdiction because "the office of mandamus is to enforce and not establish a right.' United States v. Mellon, 59 U.S.App.D.C. 24, 32 F.2d 415 (1929), certiorari denied 280 U.S. 561, 50 S.Ct. 19, 74 L.Ed. 616; Stowell v. Deming, 57 App.D.C. 223, 19 F.2d 697 (1927) certiorari denied 275 U.S. 531, 48 S.Ct. 28, 72 L.Ed. 410,'[3] and 'to obtain mandamus relief the right sought to be enforced must be sufficiently clear and definite so 'as not to permit of reasonable doubt or controversy;" again citing Mellon. Appellant would also discard 28 U.S.C. § 1331 as a basis for jurisdiction 'because the jurisdictional amount is lacking.' We note, however, that plaintiffs have not relied upon 28 U.S.C. § 1331.
 
 
 11
 In Tatum v. Laird, 144 U.S.App.D.C. 72, 444 F.2d 947, 950 (1971), rev'd on other grounds, sub nom. Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 231, 33 L.Ed.2d 154 (1972), there was a question whether the jurisdictional amount required by section 1331 was met. We found it unnecessary to reach the question. For similar reasons we find it unnecessary to reach the question whether section 1361 conferred jurisdiction in the present case. As we held in Tatum, quoting from Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561, 564 (1970):
 
 
 12
 The District Court for the District of Columbia has an independent source of jurisdiction in the legislation, passed by Congress, and codified in the District of Columbia Code, 11 D.C.Code § 521, which gives that court general equity jurisdiction, and venue where either party is a resident or found within the District of Columbia. This permits actions for declaratory judgment as well as injunction to be maintained against those whose office in the Federal Government establishes their official residence in the District. Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Nestor v. Hershey (138 U.S.App.D.C. 73), 425 F.2d 504, at 521--523 (1969).
 
 
 13
 444 F.2d at 950.
 
 
 14
 Although 11 D.C.Code § 521 was not pleaded as a jurisdictional basis in the complaint in Tatum the court was not precluded from determining that jurisdiction of the subject matter attached. And see, Pang-Tsu Mow v. Republic of China, 91 U.S.App.D.C. 324, 201 F.2d 195 (1952), cert. denied, 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356 (1953).[4]
 
 
 15
 Jurisdiction in the District Court attached also by virtue of section 10(a) of the Administrative Procedure Act, codified as 5 U.S.C. § 702. Peoples v. United States Department of Agriculture, supra; Independent Broker-Dealers' Trade Ass'n v. Securities & E. Com'n, 142 U.S.App.D.C. 384, 442 F.2d 132 (1971), cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (1971); Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970); Pickus v. United States Board of Parole, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974).
 
 II. THE QUESTION OF JUSTICIABILITY
 
 16
 Childs, the original plaintiff, on May 6, 1971, was ordered released on federal parole to the physical custody of the State of Pennsylvania on detainer. Federal parole supervision of Childs did not expire, however, until August 5, 1973. In the meantime on August 4, 1971, seventeen other federal prisoners moved to intervene as plaintiffs pursuant to Rule 24, F.R.Civ.P. These plaintiffs alleged they had applied for and had been denied parole.
 
 
 17
 On August 13, 1971, while Childs' suit was still pending, the motion of the seventeen prisoners to intervene was granted, 'it appearing (as the order states) that there is no opposition thereto and the court having determined on the basis of the entire record in the case that permissive intervention under Rule 24(b)(2) of the Federal Rules of Civil Procedure is appropriate. . . .' This action of the court is not contested on the appeal, nor was it in the District Court.
 
 
 18
 The intervenors and Childs filed an amended class action complaint seeking relief similar to that sought by Childs in his complaint. In Count I they prayed for an order granting declaratory relief, and, in Count II, for an injunction in the nature of mandamus. Thereafter the cases of Childs and the intervenors were consolidated by order of the District Court on their motion.
 
 
 19
 Though the Board now states that the case of Childs has been mooted, no suggestion of mootness is addressed to the cases of the intervenors, or to the nearly 80 additional cases of prisoners similarly situated which on motion of the Board were consolidated with the Childs case in which interventions had been allowed by the order of August 13, 1971.
 
 
 20
 Non-justiciability was first raised in appellant's Reply Brief in this court. The Board's argument is limited to the position that there is no case or controversy because plaintiffs made no claim that present Board practices prevented any plaintiff's release from prison--that, as the trial judge explained in denying transfer of the case,[5] '(t)he thrust of the present complaint, as the court understands it, is that plaintiffs, as prospective parolees, have a right not to favorable action in their individual cases, . . . but to some assurance, in the form of standards, that a government agency which has the power of incarceration versus relative liberty over them will not exercise its power in an arbitrary or capricious manner.'
 
 
 21
 We must disagree that the complaints present no justiciable issue. Appellees include federal prisoners who applied for and have been denied parole and who complain that Board procedures in the application process are not consistent with due process of law. The Board would now make the existence of a case or controversy depend upon unrealistic verbiage. Appellees could not allege that their parole applications, processed under standards of due process, would have been successful; but we must accept the position that with due process some might have been.
 
 
 22
 We must also accept the position that if applications must be processed consistently with due process of law, their denial inconsistently with due process impairs a right which appellees are entitled to have vindicated by the judiciary. Resort to the court in such a situation brings there a case or controversy by prisoners who have a 'personal stake in the outcome,' such a stake as to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions'. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). One could not easily find a context in which these conditions of justiciability more clearly appear.
 
 
 23
 In United States ex rel. Johnson v. Chairman, N.Y.St. Bd. of P., 500 F.2d 925 (2d Cir. 1974), judgment vacated as moot, sub nom. Regan v. Johnson, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), the court decided the due process issue on its merits with no suggestion that the court or the parties entertained any doubt as to the justiciability of the issue, in all relevant respects the same as that now before us. See, also, the opinion of Judge Tuttle in Scarpa v. United States Board of Parole, 468 F.2d 31 (5th Cir. 1972), rev'd, 477 F.2d 278 (1973) (en banc). The en banc opinion reversing, however, in no manner suggested non-justiciability of the issue. Reference to that decision in United States Board of Parole v. Merhige, 487 F.2d 25 (4th Cir. 1973), as having affirmed the action of the District Court in dismissing Scarpa's complaint 'for failure to state a justiciable issue upon which relief could be granted,' Id. at 28, is not to be interpreted in light of the history of Scarpa as a ruling that the issue there, and here insofar as it is one of due process, did not amount to a case or controversy under Article III, but as a ruling that the issue as presented entitled Scarpa to no relief. We have found no decided case, whether supporting or not the right to due process accompanying denial of parole, which holds the question when presented by a frustrated applicant does not present a case or controversy under Article III.
 
 III. THE CLASS ACTION QUESTION
 
 24
 On August 4, 1971, pursuant to Rule 23(c)(1), F.R.Civ.P., Childs moved for an order determining that the suit could be maintained as a class action. His complaint and the complaints subsequently filed by the intervenors sought declaratory and injunctive relief with respect to the procedure in certain respects which the Board should be required to follow in considering and acting upon applications for parole. On August 13, 1971, the court responded to Childs' motion by an order in the following terms:
 
 
 25
 Upon consideration of plaintiff's motion for an order determining that this action is to be maintained as a class action, defendant having interposed no opposition thereto, and the court having determined that the class action prerequisites are met, that is, that the proposed class is so numerous that joinder of all members is not practicable, that the operative questions of law and fact are common to the class, that the claims of the representative parties are typical of the claims of the class, that the representative parties will fairly and adequately protect the interest of the class, and that the party opposing the class has refused to act on grounds generally applicable to the class it is . . .
 
 
 26
 ORDERED that this action shall be maintained as a class action, the class being all federal prisoners who are eligible for consideration for parole under the terms of 18 U.S.C. § 4203.
 
 
 27
 From the pleadings it is clear that appellees themselves are within the class of prisoners who are affected by the administrative practices of the Board respecting applications for parole.[6] Notwithstanding its previous acquiescence in the maintenance of the case as a class action the Board now contends that the requirements of Rule 23, F.R.Civ.P. were not met, principally because the District Judge failed to direct notice to all parties, as required by Rule 23(c)(2), F.R.Civ.P., which in part reads:
 
 
 28
 In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . .
 
 
 29
 It seems clear, however, from the terms of its class action order, above set forth, that the District Court authorized the action to proceed pursuant to Rule 23(b)(2), not pursuant to Rule 23(b)(3).
 
 
 30
 Under the provisions of Rule 23(b)(2), the court, having properly found that the requirements of 23(a) were met, held that the action could be authorized to be maintained as a class action if in addition it met the requirement of (b) (2), that is:
 
 
 31
 the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . ..
 
 
 32
 The District Court properly found also that the case met this requirement. In this situation the notice provision of Rule 23(c)(2) does not apply. As the Supreme Court recently stated in Eisen v. Carlisle & Jacquelin,417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974):
 
 
 33
 By its terms subdivision (c)(2) is inapplicable to class actions for injunctive or declaratory relief maintained under subdivision (b)(2).
 
 
 34
 It is probable that the Board did not oppose in the District Court the class action determination because the Board recognized that it would be able to implement throughout the country any court decision in the case.
 
 
 35
 We might add that were we of the opinion that the determination with respect to the class action was erroneous, and the Board should wish to pursue this aspect of the case further, on the theory that subsection (b)(3) of Rule 23 applies, a remand to the District Court would be in order to enable the District Court to consider and decide the problem in light of such facts as the parties might present.
 
 
 36
 That the case is manageable as a class action seems clear enough, though now disputed by the Board for the first time in its Reply Brief in this court. The control over parole procedures, to the extent involved in the case, is in the Board. Regulations of the Board which may be required by valid court order, certainly to the limited extent presently involved, can be effected for general application throughout the federal prison system. Indeed the action of the Board in furnishing guidelines in compliance with paragraph 3 of Judge Bryant's order, and in applying after September 30, 1974, regulations requiring a statement of reasons for Board denial of parole, the subject of paragraph 1 of Judge Bryant's order, so demonstrates. Pretermitting at this point the validity of paragraph 2, no reason appears for a different view with respect to that provision.
 
 
 37
 Finally, with respect to this phase of the litigation, whether or not the class action determination was correct seems academic insofar as there can be any question that the merits of the due process issue are now before us for decision. The case differs in this respect from Eisen v. Carlisle & Jacquelin, supra, where it was not feasible for plaintiff to conduct the litigation except as a class action. See 417 U.S. at 177, 94 S.Ct. 2140, 40 L.Ed.2d 732. In contrast, numerous individual appellees, plaintiffs in the District Court, present the merits for decision as individuals whether or not their respective complaints state as well a class action.
 
 
 38
 We accordingly turn to the merits.
 
 IV. THE DUE PROCESS ISSUE
 
 39
 The framework within which this issue should be decided we find in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Supreme Court held that revocation of parole must be accompanied by certain minimum due process safeguards. Chief Justice Burger pointed out that constitutional rights no longer "turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' Graham v. Richardson, 403 U.S. 365, 374, (91 S.Ct. 1848, 1853, 29 L.Ed.2d 534) (1971)", Id. at 481, 92 S.Ct. at 2600. The Chief Justice described the important function of parole in the criminal justice system as follows:
 
 
 40
 During the past 60 years, the practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system. . . . Rather than being an ad hoc exercise of clemency, parole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.
 
 
 41
 408 U.S. at 477, 92 S.Ct. at 2598.
 
 
 42
 In determining what procedural safeguards were required in the revocation of parole, the Court first considered due process itself, and then turned to the nature of the liberty afforded to a parolee:
 
 
 43
 Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, (71 S.Ct. 624, 646, 95 L.Ed. 817) (1951) (Frankfurter, J., concurring), quoted in Goldberg v. Kelly, 397 U.S. 254, 263, (90 S.Ct. 1011, 1018, 25 L.Ed.2d 287) (1970). The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment. Fuentes v. Shevin, 407 U.S. 67, (92 S.Ct. 1983, 32 L.Ed.2d 556) (1972). Once it is determined that due process applies, the question remains what process is due. . . . '(C)onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, (81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230) (1961).
 
 
 44
 The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. . . . Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison.[8]
 
 
 45
 We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others.
 
 
 46
 Id. at 481--482, 92 S.Ct. at 2600.
 
 
 47
 The deprivations due to revocation of the conditional liberty enjoyed by a parolee demonstrate the serious effects of denial of parole. The applicant is deprived of the valuable features of conditional liberty described by the Court. This seems to us to place the procedures by which this deprivation is accomplished by the government under a standard of due process. The Board holds the key to the lock of the prison. It possesses the power to grant or to deny conditional liberty. In the exercise of its broad discretion it makes judgments concerning the readiness of an inmate to conduct himself in a manner compatible with the well-being of the community and himself. If the Board's decision is negative, the prisoner is deprived of conditional liberty. The result of the Board's exercise of its discretion is that an applicant either suffers a 'grievous loss' or gains a conditional liberty. His interest accordingly is substantial. We think it follows that the parole decision must be guided by minimal standards of due process of law which at the same time reflect the need of the parole system to function consistently with its purposes and responsibilities.
 
 
 48
 In United States ex rel. Johnson v. Chairman, N.Y. St. Bd. of P., supra, 500 F.2d at 926, the court so decided, agreeing with the district court 'that as a minimum safeguard against arbitrary action, the due process clause of the Fourteenth Amendment required the Parole Board to state the reasons (for denial of parole). . . .' Referring to Morrissey, Judge Mansfield stated:
 
 
 49
 Parole was thenceforth to be treated as a 'conditional liberty,' representing an 'interest' entitled to due process protection. A prisoner's interest in prospective parole, or 'conditional entitlement,' must be treated in like fashion. To hold otherwise would be to create a distinction too gossamerthin to stand close analysis. Whether the immediate issue be release or revocation, the stakes are the same: conditional freedom versus incarceration.
 
 
 50
 500 F.2d at 928. As previously noted, supra, the judgment in Johnson was vacated by the Supreme Court and the case remanded to the District Court to dismiss the cause as moot. Thus the decision by the Court of Appeals no longer stands. Nevertheless, I find the views expressed by the court persuasive.
 
 
 51
 Additional decisions holding that due process attaches to parole release proceedings are United States ex rel. Harrison v. Pace, 357 F.Supp. 354 (E.D.Pa.1973), and Candarini v. Attorney General of United States, 369 F.Supp. 1132 (E.D.N.Y. 1974). Harrison cited Judge Bryant's decision in the present case, and in Candarini the court found that,
 
 
 52
 The Board's parole release decision determines the fate of the inmate. He may be released to the community in a state of conditional freedom or he may continue to serve his sentence within the institution. On the one hand he is free and on the other hand he must suffer all the deprivations and penalties of the federal prisons. To the inmate, a negative decision from the Board surely condemns him to suffer a grievous loss. The inmate's interest in conditional liberty requires that minimum due process attach.
 
 
 53
 369 F.Supp. at 1136. And see the decision of the California Supreme Court in In re Sturm, 11 Cal.3d 258, 113 Cal.Rptr. 361, 521 P.2d 97 (1974) (en banc).
 
 
 54
 In Monks v. New Jersey State Parole Board, 58 N.J. 238, 277 A.2d 193, 199 (1971), the New Jersey Supreme Court stated that 'fairness and rightness clearly dictate the granting of (a) prisoner's request for a statement of reasons (upon denial of parole).' To the same effect is Johnson v. Heggie, 362 F.Supp. 851 (D.Colo.1973). And see, Fischer v. Cahill, 474 F.2d 991, 993 (3rd Cir. 1973), where it is said:
 
 
 55
 A claim of denial of such a statement, minimally at least, can be construed on this record as setting forth a denial of the equal protection of the laws.
 
 
 56
 A recent Seventh Circuit case, King v. United States, 492 F.2d 1337 (7th Cir. 1974), has also found that a statement of reasons is required but based its decision on section 555(e) of the Administrative Procedure Act.[8] That provision, however, presents difficulties when applied to the parole system. It provides generally for notice of denial in whole or in part of a written application made in connection with any agency proceeding. The section then continues: 'Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement on the grounds for denial.' Thus no statement of grounds is required by section 555(e) for denial of an application in situations which may be, or may become, common to many parole proceedings; and the 'self-explanatory' exception is likely to be a fruitful occasion for controversy in its application.
 
 
 57
 Moreover, where the liberty of an inmate is involved the matter seems more appropriately to be resolved within the ambit of due process rather than under the Administrative Procedure Act. Though I accord great respect to the King court, the opinion in the case fails to consider these difficulties or still others incident to reliance upon the Administrative Procedure Act. Such reliance leaves the matter in an unstable and uncertain posture. Moreover, section 702 of the Act, in providing for judicial review of agency action, excepts from such review agency action 'committed to agency discretion by law' (section 701(a)(2)). While the Board has broad discretion the issue of judicial review is not now before the court for decision, and there is no need to relegate every exercise of Board discretion, in acting upon an application, to an unreviewable status by basing the requirement of a statement of reasons upon section 555(e) of the Administrative Procedure Act, and thus exempting it from the review provisions of the Act. In neither Morrissey nor in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), considered infra, did the Court turn to the Act in preference to the Constitution.
 
 
 58
 In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), decided after Morrissey, the Supreme Court has thrown additional light on prisoners' constitutional rights. The case involved, inter alia, the validity of procedures applied by state prison authorities in serious disciplinary proceedings which might result in loss of good-conduct time. The court emphasized that prisoners had not lost their constitutional rights by virtue of their confinement:
 
 
 59
 There is no iron curtain drawn between the Constitution and the prisons of this country. . . . He (the prisoner) may not be deprived of his life, liberty or property without due process of law. Haines v. Kerner, 404 U.S. 519 (92 S.Ct. 594, 30 L.Ed.2d 652) (1972); Wilwording v. Swenson, 404 U.S. 249 (92 S.Ct. 407, 30 L.Ed.2d 418) (1971); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1494 (1945).
 
 
 60
 Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. Cf. Morrissey v. Brewer, 408 U.S. (471), at 488 (92 S.Ct. 2593, at 2603, 33 L.Ed.2d 484). In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.
 
 
 61
 418 U.S. at 555, 556, 94 S.Ct. 2963 at 2974. The Court continued:
 
 
 62
 . . . the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated. This is the thrust of recent cases in the prison disciplinary context.
 
 
 63
 Id. at 557, 94 S.Ct. at 2975.
 
 
 64
 Just as the Court found in Wolff that the State, having created the valuable right to good time, must act according to constitutional safeguards when it withdraws the right, so here, where the federal government has made parole an integral part of the penological system, I believe it is also essential that authority to deny parole not be arbitrarily exercised. While the applicant's status is not changed by such a denial in the sense that he remains in the same custodial situation as before, the necessity of due process to support the denial is not therefore obviated, for the status remains the same because of a Board determination which if favorable would have changed the status to one of greater liberty.
 
 
 65
 The decisional law respecting parole has significantly evolved since Morrissey. Thus, except for Scarpa v. United States Board of Parole, supra, to be considered infra, the cases leaning in a different direction are pre-Morrissey, or have been overruled or distinguished either explicitly or implicitly by later cases. Madden v. New Jersey State Parole Board, 438 F.2d 1189 (3rd Cir. 1971), and Mosley v. Ashby, 459 F.2d 477 (3rd Cir. 1972), have both been superseded by the Monks case, supra. The Farries case, as noted supra, footnote 8, has been superseded by King, supra. Dorado v. Kerr, 454 F.2d 892 (9th Cir. 1972), and Menechino v. Oswald, 430 F.2d 403 (2d Cir. 1970), were decided before Morrissey, and Menechino must now be viewed in light of the reasoning of the opinion in United States ex rel. Johnson, supra. Bradford v. Weinstein, 357 F.Supp. 1127 (E.D.N.C.1973), cites favorably Menechino, but that earlier decision as pointed out in Johnson was a limitation upon the scope of due process, not its denial.
 
 
 66
 A special reference is added with respect to Scarpa, supra. In the original decision of the division, at 468 F.2d 31, before Morrissey, Judge Tuttle's opinion for the majority referred at some length to the opinion of Judge Burger (now Chief Justice) in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963), describing the parole system, and added:
 
 
 67
 One significant feature of this discussion by the court indicates that the court considered the discretion of the Board of grant parole to be in pari materia with the Board's discretion to revoke. The number of cases in which courts have held that some elements of due process are required with respect to the revoking of parole is sufficiently large to permit a strong argument that at least something other than an absolute unbridled exercise of discretion by the Board can be required when the issue at stake is the right of a prisoner to have his request for parole 'considered.' (Emphasis in original.)
 
 
 68
 468 F.2d at 37.
 
 
 69
 The division decision was reversed by a divided en banc court in terms which have been interpreted as holding that due process is not applicable to parole release proceedings. This interpretation seems mistaken. The en banc court did hold that the 'full panoply of due process protections' did not apply. 477 F.2d at 282. It also distinguished revocation of parole and its grant. Moreover, the opinion states 'Scarpa has suffered no deprivations.' Id. Yet the court seems primarily to have concluded that Scarpa was asking for more than he was entitled to. Judge Tuttle I think stated the matter correctly when he pointed out for the dissenting judges that the majority,
 
 
 70
 . . . stands rather on the proposition that what Scarpa says happened to him (although as I have pointed out above, I think the opinion does not adequately describe what Scarpa says happened) and what he says will continue to happen to him does not raise an issue of abuse of discretion or due process.[9]
 
 
 71
 477 F.2d at 286. It needs to be added that the en banc decision in Scarpa was remanded by the Supreme Court for determination of mootness, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973), followed by the Fifth Circuit's vacation of the decision as moot (December 3, 1973).
 
 
 72
 Due process is one of the great ideas of the law. The Founders gave it constitutional status to protect liberty from arbitrary governmental deprivation in the unfathomable future. Morrissey seems to me to point to its application to the Board's administration of its parole release powers, with a scope of the process due more confined, however, that in revocation of parole.[10]
 
 V. THE ISSUE AS TO THE PROCESS THAT IS DUE
 
 73
 The District Court held 'that the application aspect (of parole) must of necessity fall under the canopy of the minimal due process requirements claimed by plaintiffs,' namely, (1) written statements of reasons when an application was not granted, (2) regulations governing access by a prisoner to information which will be before the Board and the submission of responses on behalf of parole applicants, and (3) explanatory guidance as to the criteria to be considered in passing upon applications.
 
 
 74
 The Third Paragraph of the Order. As we have stated, appellant has not appealed from the third of these requirements and we need not discuss it. Such further consideration of this provision as may be necessary in view of Pickus is initially for the District Court.
 
 
 75
 The Written Statement of Reasons, Paragraph 1 of the Order. We hold paragraph 1 to be valid. We note that appellees expressly disclaim as a basis for requiring a written statement of reasons the right to obtain court review of denial of parole. The basis presented by appellees is the essentiality of such a statement to the validity of the procedure, independent of any possible resort to the courts for review of the denial. It is on this basis that we uphold paragraph 1.
 
 
 76
 In Wolff v. McDonnell, supra, the Court held that in the imposition of serious disciplinary action against a prisoner 'there must be a 'written statement by the factfinders as to the evidence relied on and reasons . . ..' Morrissey, 408 U.S., at 489 (92 S.Ct. 2593, at 2604).' The need is explained by the following statement of the Court:
 
 
 77
 . . . as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety are so implicated, that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission. Otherwise, we perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements. (Footnote omitted.)
 
 
 78
 418 U.S. at 565, 94 S.Ct. at 2979.
 
 
 79
 There is a substantial difference on the due process issue between a finding of serious disciplinary action leading to loss of good-time credits, involved in Wolff, and denial of an application for parole. The broad discretion of the Board in the latter instance lessens the content of required due process; but in both denial of parole and in disciplinary action a written statement of reasons is a safeguard of fairness, so much so that the court should be receptive to according it due process status. As we have seen the following decisions have required reasons to be stated: Fischer v. Cahill; Monks v. New Jersey State Parole Board; King v. United States, all supra, and see the reasoning to that effect in the opinion in Johnson, supra, as follows:
 
 
 80
 A requirement that the Board state its reasons in each case for denial of parole would also serve purposes other than facilitating judicial review, which are peculiarly appropriate for parole release determinations. A reasons requirement 'promotes thought by the decider,' and compels him 'to cover the relevant points' and 'eschew irrelevancies.' See Frankel, Criminal Sentences 40--41 (1973).
 
 
 81
 Besides safeguarding against purely arbitrary denials of parole, a reasons requirement can serve the important function of promoting rehabilitation by relieving inmates' frustrations and letting them know how they might, by improving their prison behavior or taking steps with respect to some other factor in doubt (e.g., prospective employment or housing), better their chances for release.
 
 
 82
 500 F.2d at 931--32.
 
 
 83
 In King, decided under the 'reasons' requirement of the Administrative Procedure Act, the court referred with approval to the recommendations of the Administrative Conference of the United States (25 Ad.L.Rev. 459, 484--85 (Fall, 1973)). The court quoted a report used by the Conference in preparing its recommendations:
 
 
 84
 'Giving reasons for denying parole is desirable for both rehabilitational and legal reasons. A prisoner may feel less resentful of a negative decision if he knows the reasons for it, and in planning his activities in the institution he ought to understand clearly what will help him to obtain an early parole. When the nature of his crime is such that early parole is not likely in any event, he should be protected from unrealistic hopes that can only lead to disappointment and bitterness. All this is the job of a prison counselor in any case, but the Parole Board can make that job much easier by formally stating its reasons.'
 
 
 85
 492 F.2d at 1340 n. 11. The court expressed awareness of the pitfalls enumerated by the Conference to be avoided in the giving of reasons, Id. at 1341 n. 12, but did not consider that they overcame the need for a statement of reasons, nor had the Conference itself done so.
 
 
 86
 We refer again to Monks, supra, where it is said:
 
 
 87
 The need for fairness is as urgent in the parole process as elsewhere in the law and it is evident to us that, as a general matter, the furnishing of reasons for denial would be the much fairer course; not only much fairer but much better designed towards the goal of rehabilitation. The Corrections Task Force has pointed out that well conducted parole hearings tend desirably to increase 'the involvement of inmates in the decisions which affect them and to confront them more directly with the information upon which a decision is being made.' President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections, p. 64 (1967). Favorable reference is made to the increasing number of parole boards, including, among others, those in Minnesota and Iowa, which have adopted 'the practice of calling inmates back after a hearing to discuss the decision on their cases.' Id. at 65. Professor Dawson reports that in Michigan and Wisconsin 'the parole boards are careful to explain to the inmate the reason for the decision reached' and 'to suggest what, if anything, the inmate can do to improve his chances for parole later.' Dawson, 'The Decision to Grant or Deny Parole: A Study of Parole Criteria in Law and Practice,' 1966 Wash.U.L.Q. 243, 302. He also reports that statements of the reasons are placed in the inmates' files and that although the statements are quite brief, 'the necessity for making them requires some reflection on the grounds for the decision.' Id. at 302.
 
 
 88
 277 A.2d at 197. The Monks court accordingly held that the state Board's rule against giving reasons for denial,
 
 
 89
 . . . should be replaced at an early date by a carefully prepared rule designed generally towards affording statements of reasons on parole denials, while providing for such reasonable exceptions as may be essential to rehabilitations and the sound administration of the parole system.
 
 
 90
 Id. at 199.
 
 
 91
 The decisions which include appellate review as a reason for requiring written statements,[11] seem to us also to support the requirement even though court review is not to be had, a question we leave aside. Reasons are required to avoid arbitrariness and to promote the proper administration of the parole system.
 
 
 92
 We consider now whether Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), requires a different result. The Court there held that a judge, in sentencing a youth offender as an adult under section 5010(d) of the Youth Corrections Act, was not required to state reasons for finding the youth would not derive benefit by being sentenced under the Act. The decision rests upon statutory construction of the Youth Corrections Act. The Court confined its decision as follows:
 
 
 93
 There is no contention here that the District Court relied upon improper or inaccurate information. United States v. Tucker, 404 U.S. 443, (92 S.Ct. 589, 30 L.Ed.2d 592) (1972). Petitioner contends he was denied due process because he was deprived of his claimed right to be sentenced under the Act, without a reasoned explanation on the record for the asserted deprivation. We need not address this contention, for it was not raised before the District Court, the Court of Appeals, or in the question presented in the petition for certiorari. . . .
 
 
 94
 418 U.S. at 431 n. 7, 94 S.Ct. at 3047. See, United States v. Allen, 166 U.S.App.D.C. ---, 510 F.2d 651 (1974).
 
 
 95
 In light of the legislative history of the Act, the background of a trial judge's traditional authority to sentence without giving reasons, and the limited scope of appellate review of sentencing, the Court concluded that the Youth Corrections Act gave the judge a choice of alternative sentences, but placed upon the judge no burden of explanation beyond an explicit finding of 'no benefit' so as to demonstrate that the alternative had been considered. In view of the extensive immunity of sentencing from judicial review, if within statutory bounds, the Court in Dorszynski found that the giving of reasons could only be justified 'to facilitate appellate supervision of, and thus to limit the trial court's sentencing discretion,' a justification the Court rejected because 'the discretion vested in a district judge under § 5010(d) (of the YCA) is essentially the same as the traditional discretion vested in the court, for example, to impose the minimum sentence on a first offender or a larger sentence on a recidivist.' 418 U.S. 424 at 442, 94 S.Ct. at 3052. We think the part the judge has been accorded in sentencing is so different from the status of the Parole Board in the penological system as to call for a different approach to the due process issue, and that the ruling in Dorszynski is not to be taken as a constitutional precedent for rejecting the need, under the Due Process Clause, of a written statement of reasons for Board denial of parole. Sentencing is by a judicial officer clothed with legislatively delineated alternatives within which to exercise his discretion. Parole consideration comes at a different stage of the over-all system, and is by a Board possessing broad but legislatively undefined discretion except to grant or deny parole. For the Board to exercise its discretion fairly and knowledgeably within the purposes of the system, rational means--rational considerations--must attend its functioning. By requiring the Board to advise the applicant in writing of the reasons his application is denied due process goes a way to assure rationality.
 
 
 96
 True it is that the rationale for this requirement may well be advanced also to support a similar statement by a judge in finding a youth would not benefit by a sentence under the Youth Corrections Act. Each situation involves, for example, the important factor of rehabilitation; but the Court did not decide in Dorszynski that a statement of reasons by the judge would not have advantages. It decided that Congress did not require such a statement in presenting the judge with the alternative of utilizing the Youth Corrections Act. The decision leaves open the question whether the Due Process Clause applies to the procedures of the Parole Board resulting in denial of parole, and, if so, whether minimally a written statement of reasons for this deprivation is reasonably essential to guard against arbitrariness, to assure fundamental fairness, and otherwise to further the purposes of the system.
 
 
 97
 Access to Information and Right to Respond; Paragraph 2 of the Order. We come now to paragraph 2 of Judge Bryant's order, providing for the submission to the court within 90 days from October 1, 1973, of
 
 
 98
 proposed regulations governing access by a prisoner to the information which will be before the Board and the submission of responses on behalf of parole applicants, . . .
 
 
 99
 A considerable development in the procedures of the Board has occurred since October 1, 1973. Detailed guidelines were issued, regulations were adopted which required an applicant to be furnished a written statement of reasons why his application for parole was denied, and administrative review procedures were placed in effect, see Part II, vol. 39, No. 109, F.R. §§ 2.25, 2.26. Within the Department of Justice, of which the Board is a part, sensitivity to the national concern regarding the operation of the federal penological system, with much attention given to the importance of parole, led to these new procedures. Moreover, litigation throughout the country has exposed the operation of the system to judicial scrutiny, emanating from the serious consequences of its operation upon not only the individuals directly concerned but the public as well.
 
 
 100
 There is a possible relationship between these developments, including the requirement of a written statement of reasons for denial of parole, and the need asserted by appellees to have access to the information which will be before the Board and the submission of responses on their behalf. In Pickus, supra, while pointing out that the merits of the rules and standards the Board has adopted were not under review, our court held them essentially invalid for failure of compliance by the Board with the provisions of the Administrative Procedure Act in their adoption.
 
 
 101
 The ultimate effect of the foregoing developments may have great significance upon the subject matter of paragraph 2 of Judge Bryant's order. For example, when written reasons are given for denial of parole, as we hold is required, the basis for the denial becomes known to the applicant. This may afford an opportunity for administrative review within the Board, which in turn may enable the prisoner significantly to assist the Board in clarifying the situation.
 
 
 102
 We think the developments since the decision of the District Court, and those which might follow now from our Pickus decision, should be explored further before the court makes a constitutional decision as to the validity of paragraph 2 of the order on appeal. We are encouraged in this thought also by Board representation of proposed changes with respect to access by criminal offenders to information in their files, which it is said 'would in large part moot the discovery issues in this case' (Opening Brief, p. 27), and, also, the forecasting by the Board of 'administrative procedures (which) are undergoing scrutiny and revision' as part of an evolutionary process which should not be 'ossified.' (Id.)
 
 
 103
 We conclude by reason of the foregoing that paragraph 2 should be vacated, a final decision by the District Court with respect to its subject matter to await such further consideration and action, with the aid of the parties, as to the District Court seems appropriate in the interests of justice. 28 U.S.C. § 2106.
 
 
 104
 Our decision is also without prejudice to such modification of paragraph 1 of the order of the District Court as may be proposed by the Board as desirable in exceptional circumstances, and be found by the court to be justified and consistent with due process of law. Cf., Wolff v. McDonnell, supra, 418 U.S. at 539, 94 S.Ct. 2963. Moreover, experiment with the nature and content of the statement informed by experience, is not foreclosed by our bare holding that a written statement is required by due process of law.
 
 
 105
 Paragraph 1 of the Order of the District Court of October 1, 1973, is affirmed. Paragraph 2 of the Order is vacated and the case remanded for further consideration consistent with this opinion.
 
 APPENDIX
 Findings of Fact
 
 106
 1. The Board does not presently provide, on a routine basis, statements of its reasons for not granting parole.
 
 
 107
 2. The Board's failure to convey reasons for its decisions not to grant parole has an impact upon parole applicants which includes both the appearance and reality of lacking fundamental fairness.
 
 
 108
 3. Under the Parole Board's present practices and procedures there exists a substantial danger that a significant number of decisions not to grant parole are made without reasoned consideration of the relevant facts and factors in each case, and are, therefore, arbitrary and capricious.
 
 
 109
 4. The Board's failure to require that decisions not to grant parole include stated reasons of any kind fails to provide reasonable assurance that such decisions will be reasoned decisions, based upon the facts of each case, rather than arbitrary or capricious decisions.
 
 
 110
 5. Under present Parole Board practices and procedures, a narrative written statement of reasons for not granting parole, which includes reference to the relevant facts and factors in each case, can be supplied by the Board with a minimum of administrative burden or additional resources.
 
 
 111
 6. The Board does not presently provide an opportunity for a parole applicant, or a representative of an applicant, to become apprised of the information before the Board which will be considered in passing upon the application for parole. This refusal is expressly not limited to a claimed need for confidentiality, but is instead asserted to be necessary on the ground that such appraisal would make the parole interview overly adversarial because applicants would attempt to dispute adverse allegations.
 
 
 112
 7. Present practices and procedures do not provide reasonable assurance that the Board's decisions on applications for parole will be based upon reasonably reliable determinations of fact. In fact, under present Parole Board practices and procedures, there exists a substantial danger of decisions which are based upon clearly erroneous assumptions of fact.
 
 
 113
 8. The sources of said danger of error include evidence of filing errors and omissions; confusion stemming from instances of mistaken identity; possible reliance upon outdated and superseded information; reliance upon unsubstantiated assertions; reliance upon conflicting, unclear, and in some instances not apparently reliable psychological testing data and similar information; and the like.
 
 
 114
 9. A procedure permitting a parole applicant to become apprised of the information which is before the Board, and to submit in some form a response, would greatly reduce the presently excessive danger of erroneous factual bases for decisions. Such a procedure can readily be devised so as to involve relatively little additional administrative burden. Such a procedure can be adopted with relatively little delay in the decision-making process. And, such a procedure can be adopted without thwarting the non-adversarial purposes of the parole application process. Indeed, such a procedure may frequently lead to the correction of errors--such as those resulting from misfilings, outdated information, or mistaken identity--which the Board would view as helpful rather than adversarial or 'argumentative.'
 
 Conclusions of Law
 
 115
 The constitutional requirements of minimal due process--i.e., the appearance and actuality of fundamental fairness; reasonable assurance of reasoned decisions rather than arbitrary or capricious ones; and reasonable assurance of reasonably reliable factual bases for decisions--are applicable to the parole application process.
 
 
 116
 In the context of the parole application process, minimal due process requires, for the reasons set forth in the foregoing findings of fact, and in the October 1, 1973 memorandum and order, each of the procedures set forth in the order of October 1, 1973.
 
 TAMM, Circuit Judge (concurring):
 
 117
 I concur in the conclusions that Judge Fahy reaches in his opinion and in most of his reasoning.
 
 
 118
 I believe that the due process clause applies to prisoners whose applications for parole have been denied. A prisoner's interest in his application for conditional liberty is substantial, and denial of that opportunity must be accompanied by minimal standards of due process of law. Moreover, I agree with Judge Fahy that this result is compatible with and a natural extension of Chief Justice Burger's approach in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
 
 
 119
 However, I recognize a distinction between the discretion afforded the government in denying an application of conditional liberty and in revoking that liberty once granted. Consequently, I do not read our holding as requiring that parole denial procedures incorporate all the elements of due process made applicable to parole revocation proceedings in Morrissey. Finally, in light of the broad discretion given the Board in reviewing parole application, I do not believe that our holding today will place the courts in the business of reviewing each individual application for release.
 
 
 120
 With these reservations, I join the court's opinion.
 
 
 121
 LEVENTHAL, Circuit Judge (concurring in the result):
 
 
 122
 I concur in Parts II and III of Judge Fahy's opinion and in his conclusion that jurisdiction exists under § 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (1970). However, I would decide the merits on statutory, rather than constitutional, grounds.
 
 
 123
 I would hold that applicants who have been denied parole have a minimum procedural right under the Parole Act as a whole, read in the light of the Administrative Procedure Act, 5 U.S.C. § 555(e) (1970), to 'a brief statement of the grounds for denial.' King v. United States, 492 F.2d 1337 (7th Cir. 1974), See also Pickus v. United States Board of Parole, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974).[1]
 
 
 124
 In my view, the King opinion ably sets forth the many pertinent considerations underlying both its statutory construction and its abstention from constitutional adjudication. It reports the recommendations that reasons be required, made by the Task Force on Corrections for the President's Commission on Law Enforcement and Administration of Justice (in 1967), and by the Administrative Conference (in 1972). They both stress the need for a statement of reasons as a check on abuse or error. The opinion also describes the 'pitfalls' discerned by the Administrative Conference in the excessive rigidity and formality that may arise in the effectuation of any 'reasons' requirement, and the readiness of the United States Board of Parole to provide reasons on an experimental basis.
 
 
 125
 The Rule of Administrative Law embraces the 'simple but fundamental' requirement that an agency or official set forth its reasons,[2] a requirement that is essential to 'the integrity of the Administrative process,'[3] for it tends to require 'the agency to focus on the values served by its decision, . . . hence releasing the clutch of unconscious preference and irrelevant prejudice.'[4] It is well understood that the manner of application of this requirement will vary with the nature of the agency, for agencies are not fungible, and with the nature and formality of the proceeding and the agency's determination. While the Rule of Administrative Law, with its procedural requirements, is rooted in fairness considerations, the emphasis is on a broad-gauged appraisal of the decision-making process, and assurance of its reliability.
 
 
 126
 When judicial doctrines are cast in terms of an individual's constitutional 'rights,' they run a risk of abstraction and inflexibility, a tendency to block avenues of experimentation. The tendency persists even though due process decisions have been concerned with the integrity of the decision-making process, as well as with individual rights. See Wolff v. McDonnell, 418 U.S. 539 at 564, 94 S.Ct. 2963 at 2979, 41 L.Ed.2d 935 (1974). The difficulties inhering in a constitutional determination for this case are compounded by the fact that it will be applicable to state, as well as federal, parole determinations, and that the characteristics and processes of the state parole systems involve matters of background and perspective that are not before us and on which we have no informed judgment.
 
 
 127
 I acknowledge that a substantial constitutional question is raised by appellees. This should inform our interpretation of the statute, but, by declining to rest our decision on constitutional grounds, we would provide 'such procedural protection as comports with basic fairness, discerned in the light of the contemporary regulatory climate', while preserving 'an opportunity for Congress (and the states) to reexamine the issue' in terms of the problems that may emerge. Thompson v. Washington, 162 U.S.App.D.C. 39, 52, 497 F.2d 626, 639 (1973).[5]
 
 
 128
 The matter would stand in different perspective in my mind if the constitutional issues were foreclosed by established precedent. But that is not the case. While it is clear that 'a prisoner is not wholly stripped of constitutional protections,' see Wolff v. McDonnell, supra, 418 at 555, 94 S.Ct. at 2974, it is likewise clear from Wolff that Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), is not applicable in full force to prisoners still in detention--even when they are involved in disciplinary proceedings that may culminate in the removal of a statutory right to goodtime credit that is, under state law, subject to forfeit only for serious misconduct.
 
 
 129
 The quality of a prisoner's expectation in a grant of parole may vary from state to state, but typically it is less firm than his legitimate expectation of receiving good-time credit--that is, it frequently depends on some assessment of rehabilitation potential and is not awarded automatically, in the absence of misconduct, as soon as eligibility is established. And of course it is far different from the expectancy of a person on parole or probation,[6] who has a statutory right to remain at large in the absence of probable misconduct.
 
 
 130
 Taking into account the considerations that the ambit of constitutional rights of procedure may depend on the nature and extent of statutory expectancies,[7] that these vary among the states, and that constitutional doctrine has a greater tendency toward abstraction, extension and rigidity, it is, in my view, sound principle to confine our decision to require a statement of reasons to statutory grounds.[8]
 
 
 
 [1]
 By stipulation paragraph 2 was amended to add the words 'institute said regulations within 90 days of this order', and paragraph 3 was amended to read 'and institute said procedures within 90 days of this order.'
 
 
 [2]
 In its Opening Brief, appellant stated, '(W)e agree that federal-court jurisdiction is available under 28 U.S.C. 1361.' (p. 13.)
 
 
 [3]
 Appellant inadvertently has miscited and misquoted Mellon and Stowell. In United States ex rel. Stowell v. Deming, 57 App.D.C. 223, 19 F.2d 697, 698 (1927), the court stated,
 The purpose of mandamus is not to establish a legal right but to enforce one already established; hence the legal right of relator to the performance of the particular act of which performance is sought must be clear and complete. It has been said with good reason that the right to its performance must be so clear as not to admit of reasonable doubt or controversy. The right involved must also be substantial, and not a mere abstract right.
 Mellon merely quotes the above language of Stowell.
 
 
 [4]
 Childs' 'Petition for Show Cause Order' was docketed May 27, 1970
 
 
 [5]
 A motion of the Board to transfer the case to the United States District Court for the Middle District of Pennsylvania, where Childs was incarcerated, had been denied. No contest as to that decision is before us
 
 
 [6]
 The several complaints allege that each plaintiff is a federal prisoner who 'has been or is now an applicant for parole
 
 
 [8]
 'It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom.' United States ex rel. Bey v. Connecticut Board of Parole, 443 F.2d 1079, 1086 (CA 2 1971)[7]
 
 
 [7]
 Vacated as moot, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971)
 
 
 [8]
 Although not explicitly doing so, the King decision thus seems to depart from a 1973 case in the same Circuit, Farries v. United States Board of Parole, 484 F.2d 948 (7th Cir. 1973), where the court had stated that a prisoner need not be given a statement of reasons
 
 
 [9]
 In this same connection it is interesting to compare Judge Mansfield's reference in Johnson, supra, to the limited nature of the earlier decision in Menechino v. Oswald, supra
 
 
 [10]
 The recent decision of this court in Pickus v. United States Board of Parole, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974), holding that the Board's rules and standards there involved were essentially invalid when the suit was filed, because not adopted in accordance with the procedural provisions of the Administrative Procedure Act, does not affect our decision on the applicability of due process of law to Board procedures under which an application for parole is denied
 
 
 [11]
 Candarini, supra; United States ex rel. Harrison, supra; and In re Sturm, supra
 
 
 [1]
 Pickus held that the action of the Board of Parole in setting forth criteria for parole selection is subject to the notice-and-comment requirements for rule-making established by section 4 of the Administrative Procedure Act, 5 U.S.C. § 553 (1970)
 
 
 [2]
 SEC v. Chenery Corp., 332 U.S. 194, 196--197, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)
 
 
 [3]
 Atchison, T. & S.F.R. Co. v. Wichita Board of Trade, 412 U.S. 800, 807, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973)
 
 
 [4]
 Greater Boston TV Corp. v. FCC, 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971)
 
 
 [5]
 Another reason for withholding any ruling on a constitutional claim that Parole Boards state the reasons for their decisions is the difficulty of distinguishing the constitutional claim of entitlement to a statement of reasons by courts in sentencing. Judge Fahy distinguishes Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), on the ground that the discretion of a judge, unlike that of a Parole Board, is exercised within legislatively delineated alternatives. In practical effect, however, it is clear that a judge has a much wider scope of discretion than a Board. A Board makes an either-or decision; it is given no legislatively defined alternatives because its discretion, unlike a judge's, is not broad enough to encompass alternatives
 
 
 [6]
 Morrissey was extended to probationers in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)
 
 
 [7]
 Thompson v. Washington, supra, 162 U.S.App.D.C. at 48, 497 F.2d at 635
 
 
 [8]
 Out of an abundance of caution, and to avoid any possible misunderstanding, I should like to make it clear that my conclusion as to the applicability of the reasons requirement of the Administrative Procedure Act does not signify that this situation is governed by the provision for judicial review of agency action. See 5 U.S.C. § 702 (1970). The Act's procedural provisions for notice, opportunity to make a presentation, and a brief statement of reasons apply even where the action is fully 'committed to agency discretion' and thus not judicially reviewable. See 5 U.S.C. § 555(a), 701(a) (2). In Morrissey, supra, 408 U.S. at 479--480, 92 S.Ct. 2593, the Court was careful to point out that the decision-making process--the determinations of what circumstances constitute violations of parole, and of what to do about violations that are identified--is essentially committed to the discretion of parole authorities, rather than to the courts. It is not necessary to consider whether, or to what extent, determinations of the U.S. Parole Board are 'committed to agency discretion'--beyond our ruling that the Board does not have discretion to withhold a statement of reasons for denying parole
 We are also not called upon to consider whether in some case or class of cases a statement of reasons can be withheld because the reason is obvious; if that is really the case it is doubtful that due process would require a ceremony for reciting the obvious.
 Denials of parole generally--and certainly the present case in particular--offer no possibility of excluding a statement of reasons requirement because the denial merely constitutes an 'affirmance' of some other action. That clause in 5 U.S.C. § 555(e) has little, if any, applicability to a determination which in its very essence turns on the question whether a previous determination should be extended in the light of a re-examination of the whole record, including developments in the recent past.