Application of Joseph CANDARINI,
Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Application of Baltazar Sierra CORREA,
#77155, Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Application of Esteban J. MONTOYA,
Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Application of Robert TORRES,
Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Application of John GARVIN,
Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Application of Alberto Salizar PALACIO,
Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Application of Nicholas Thomas
BELVEDERE, Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Application of Ronald COSTA,
Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Application of Bernard WILLIAMS,
Petitioner,

v.

The ATTORNEY GENERAL OF the
UNITED STATES et al., Respondents,
for a Writ etc.

Nos. 73-C-1471 to 73-C-1473, 73-C-1493,
73-C-1510, 73-C-1573, 73-C-1582,
73-C-1618, 73-C-1632.

United States District Court,
E. D. New York.

Jan. 25, 1974.

Petitioners appeared pro se.

Edward J. Boyd V, Acting U. S. Atty., Eastern District of New York, for respondents; Ethan Levin-Epstein, Asst. U. S. Atty., Eastern District of New York, of counsel.

## DECISION AND ORDER

TRAVIA, District Judge.

These matters are separately present before the court on the petitioners' applications for writs of habeas corpus,

mandamus and certiorari. The United States Attorney for the Eastern District of New York has appeared in opposition to the petitioners' requested relief. All interested respondents have been requested to appear and submit opposing papers if they so desired. Without exception, they have opted not to appear but rather have agreed that the United States Attorney for this district act as their advocate and he has submitted opposing papers on behalf of all respondents. Since all petitioners are seeking similar relief and all petitions are based on somewhat similar facts, this court files this decision and order to cover all petitions.

The salient facts are as follows. All of the petitioners are presently confined in the Federal Correctional Institution, Danbury, Connecticut. Eight of the nine petitioners are participants in the United States Board of Parole's pilot project being conducted at the Danbury Institution, among other places, to test both the concept of regionalization as well as new parole procedures.[1] As a result of this experience, the petitioners have filed the instant applications alleging that the parole release procedures of the Board of Parole ("Board") run afoul of the due process clause of the Fifth Amendment.

■■■ At the outset, that part of each petitioner's application which seeks a writ of habeas corpus must be denied. Title 28 U.S.C. § 2255 applies to an inmate who is attacking the sentence under which he is committed. In the case at bar, petitioners are not attacking their sentences but rather are attacking the parole release procedures of the Board. Consequently, the actions as they pertain to Warden Norton must be dismissed as petitioners, even if they have been denied due process, are not entitled to be released. *See, e. g.*, Halprin v. United States, 293 F.Supp. 1186 (S.D.N.Y.1968). Moreover, this court is without jurisdiction under Title 28 U.S.

C. § 2241 since neither the petitioners nor the Warden are within the Eastern District of New York. Jones v. Cunningham, 371 U.S. 236, 243–244, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); In re Gillette, 175 F.Supp. 255, 257 (E.D.N.Y. 1959). Similarly, the actions against the Bureau of Prisons of the United States, the Attorney General of the United States and the Department of Justice of the United States must be dismissed since Congress has vested exclusive authority in the Board to determine when an inmate should be placed on parole. *Cf.* Title 18 U.S.C. § 4203; Buchanan v. Clark, 446 F.2d 1379 (5th Cir.), cert. denied, 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1971).

The petitioners also seek writs of certiorari. Title 5 U.S.C. § 701(a)(2) provides:

"(a) This chapter applies, according to the provisions thereof, except to the extent that—

(2) agency action is committed to agency discretion by law."

Yet, the same chapter of the APA contains Section 706(2)(A) dealing with the scope of review, which states:

"To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion; or otherwise not in accordance with law;"

The Supreme Court of the United States has now reconciled these two seemingly contradictory subdivisions of the APA. In Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Court opted for the position that administra-

---

1. The procedures used in the pilot project are experimental in nature and do not have the effect of law.

tive action is always reviewable for abuse of discretion. This court then has jurisdiction over the subject matter of this lawsuit pursuant to Title 5 U.S.C. § 706(2)(A).[2]

Concomitantly, venue is proper in this district due to the fact that at least five of the petitioners were domiciled in the Eastern District of New York prior to their incarceration. *Cf.* Title 28 U.S.C. § 1391(e); Ott v. United States Board of Parole, 324 F.Supp. 1034, 1037 (W.D.Mo.1971). Conversely, there may be some question as to whether jurisdiction over the Board may be had in a district other than the District of Columbia. Stone v. United States Board of Parole, 360 F.Supp. 22, 24 (D. Md.1973); Langston v. Ciccone, 313 F. Supp. 56, 60 (W.D.Mo.1970). Due to the current national controversy concerning the Board's practices, this court cannot ignore the issue and will retain jurisdiction and attempt to clarify the extent, if at all, to which due process affects parole release procedures.

Courts have traditionally been satisfied with playing a minimal role in the review of parole decisions. Until recently, judges have deferred to the "expertise" of parole board members and to statutory grants of wide discretion.[3] Consequently, the Board's discretion has been described as "unreviewable" or "almost unreviewable." *See, e. g.,* Tarlton v. Clark, 441 F.2d 384, 385 (5th Cir.), *cert. denied,* 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); Langston v. Ciccone, *supra.* However, the "hands-off" doctrine has not been followed by all courts.

In 1970, the United States Court of Appeals for the Second Circuit held in Menechino v. Oswald, 430 F.2d 403 (2d Cir.), *cert. denied,* 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971), that minimum procedural due process does not attach at the parole release stage. The court reasoned that "some of the essential conditions for requiring procedural due process as a matter of Constitutional right are missing" when an inmate makes application for parole. *Id.* at 407. These essential conditions may be reduced to two. First, the type of interest that is usually protected by the due process clause is an interest that is presently enjoyed or already possessed. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin of a debtor's goods); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (termination of welfare payments); Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), (attachment of a worker's wages). In the instant suit, the petitioners are incarcerated pursuant to the judgment of a court. Clearly, they are not at liberty but rather have an expectation of conditional liberty. Consequently, their condition is qualitatively different from that of an individual whose parole is sought to be revoked.[4] Yet, this does not mean that the inmate seeking parole should be bereft of all procedural due process. Menechino v. Oswald, 430 F.2d at 416 (dis-

---

2. Jurisdiction could also be invoked under Title 28 U.S.C. § 1361. United States ex rel. Harrison v. Pace, 357 F.Supp. 354, 356–357 (E.D.Pa.1973).

3. Title 18 U.S.C. § 4203(a) provides in pertinent part:
 "(a) If it appears to the Board of Parole . . . that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole."

4. *See, e. g.,* United States ex rel. Bey v. Connecticut Board of Parole, 443 F.2d 1079, 1086 (2d Cir.), vacated as moot, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971), wherein the Court of Appeals for this Circuit remarked:
 "It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom."

senting opinion). Particularly instructive is the language of the Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972):

> "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." (citations omitted).

The Board's parole release decision determines the fate of the inmate. He may be released to the community in a state of conditional freedom or he may continue to serve his sentence within the institution. On the one hand he is free and on the other hand he must suffer all the deprivations and penalties of the federal prisons. To the inmate, a negative decision from the Board surely condemns him to suffer a grievous loss. The inmate's interest in conditional liberty requires that minimum due process attach. Secondly, the court in *Menechino* found persuasive the fact that the Board is not the inmate's adversary but rather has "an identity of interest with him to the extent that it is seeking to encourage and foster his rehabilitation and readjustment to society." [5] In light of the Supreme Court's characterization of the type of interest that warrants due process protection, this consideration pertains to the question of what process is due at the parole release stage and not to the denial of due process in its

entirety. The full panoply of rights afforded an individual in a criminal prosecution or for that matter at a parole revocation hearing need not be afforded a prospective parolee.[6] As previously mentioned, all that is required are the bare rudiments of due process. Lastly, the court is not unmindful of *Menechino's* holding but believes that if the issue is again presented to the Court of Appeals a different result may obtain on the basis of Morrissey and this Circuit's rejection of the "act of grace" analysis when offered to rebut due process deprivations.[7]

 In determining the specifics of what process is due the remarks of Mr. Justice Stewart in Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), provide a groundwork:

> "As these and other cases make clear, consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."

Of course, the Board has discretionary power to grant or deny parole. However, the Board's decision must be grounded in reason. Concomitantly, the members of the Board cannot act arbitrarily in derogation of their duties as public officials for their decisions affect society as well as the lives of the entire federal prison population. If the Board acts in an arbitrary and capricious man-

---

5. Menechino v. Oswald, 430 F.2d 403, 407 (2d Cir.), cert. denied, 400 U.S. 1023, 91 S. Ct. 588, 27 L.Ed.2d 635 (1971).

6. It is also important to note that at the time of the decision in *Menechino* due process had not yet been extended to parole revocation proceedings. *Id.* 430 F.2d at 409.

7. *Supra* note 2, at 1085–1086; *see also* United States ex rel. Johnson v. Chairman, New York State Board of Parole, 363 F.Supp. 416, 419 (E.D.N.Y.1973), wherein Judge Dooling stated:

> "In spite of the recent *en banc* decision in Scarpa v. United States Board of Parole, 5th Cir. 1973, 477 F.2d 278, 282, it is not possible to continue in the confidence that *Menechino* earlier warranted that the Court of Appeals in this Circuit will hold that prisoners are not entitled to the minimum of due process that would be accorded them by requiring the Board of Parole to disclose the ground of its denial of parole."

A notice of appeal was filed in this case on September 25, 1973.

ner, it is not only the inmate that suffers but society in general. To insure that the Board's discretionary power is exercised within the guidelines of fundamental fairness, it is incumbent upon the Board to issue explicit reasons for the denial of an inmate's application to be placed on parole. Mere pro forma language to the effect that "Your release at this time would depreciate the seriousness of the offense committed" will not suffice. What is required is that the Board set forth sufficient facts and reasons to enable a reviewing court to ascertain whether an abuse of discretion has been committed and to enable the inmate to know why he has been denied parole and what he can do to better regulate his future conduct. Childs v. United States Board of Parole, Memorandum and Order of September 30, 1973, Civil No. 1616–70 at 3–4 (D.D.C. 1973); Johnson v. Heggie, 362 F.Supp. 851, 857–858 (D.Colo.1973); United States ex rel. Harrison v. Pace, 357 F. Supp. 354, 357 (E.D.Pa.1973); Monks v. New Jersey State Parole Board, 58 N.J. 238, 277 A.2d 193 (1971); *contra,* Scar-pa v. United States Board of Parole, 477 F.2d 278 (5th Cir. 1973). The format now utilized by the New Jersey State Parole Board, an example of which appears in Beckworth v. New Jersey State Parole Board, 62 N.J. 348, 301 A.2d 727, 729 (1973), would serve as a guide.[8]

Minimum due process also requires that the Board institute on a permanent basis the appeal mechanism now being used in the pilot project. This would allow an inmate whose request has been denied to file for review within thirty days if he has new and significant information not available at the time of the hearing or can show that the reasons given for the denial do not support the decision. Concomitantly, an inmate may file a final appeal with an appellate member of the Board within ninety days after the first review decision. The implementation of these appellate procedures should not prove an undue burden to the Board for the Chairman of the Board of Parole has indicated that due to the success of the pilot project, it is going to be continued "until such time as it is absorbed into a

---

8. In Beckworth v. New Jersey State Parole Board, 62 N.J. 348, 301 A.2d 727, 729 (1973), the reasons for the denial of parole status were set forth in the following fashion:

"After consideration of the circumstances of your present offense, and in the absence of any statement by the sentencing court tending to indicate the contrary, the Board has concluded that there are certain punitive and deterrent aspects to your sentence. In the absence of any special or equitable circumstances or any affirmative evidence that you can avoid criminal behavior, and since your minimum sentence has not yet expired, the Board feels that the punitive and deterrent aspects of your sentence have not been fulfilled and that, therefore, your release would not be compatible with the community welfare.

After consideration of all records relevant to your confinement, treatment and efforts towards self-improvement while in the N. J. State Prison System, the Board is unable to conclude that there is reasonable probability that you will return to society without violation of law.

The Board feels that you have had an excellent institutional adjustment with the exception of your escape from Leesburg in May of 1970. Your receipt of a BED certificate is also noted, as is the fact that you have served almost 8 years in prison.

The Board would note certain elements which might be construed as "situational" in your murder of a friend's wife with whom you were emotionally involved. However, the Board finds strong indications of a longstanding hostility to females in your history and a potential for violence or aggressive reaction. These indications include your attempted suicide in 1950, your unstable marriages to three different women, your continuing projections of blame on them for marriage failures and the various reports of professional treatment staff.

Moreover, your escape from prison, your prior attempt at self-destruction, your reported excessive use of alcohol and the circumstances of the present murder, cause the Board concern that you still have the potential to react to not unusual situations where your concepts of masculinity are threatened with impulsive behavior.

There is nothing which affirmatively indicates that you can refrain from serious aggression and parole is therefore denied.

general parole reorganization." [9] *See* Hearing on H.R. 1598 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 93 Cong., 1st Sess. at 13 (1973).

Accordingly, it is

Ordered that the defendant Board of Parole must provide written factual statements of reasons to inmates whose applications for parole have been denied sufficient to apprise the inmate why he has been denied parole and how he is to better regulate his future conduct commencing no later than sixty days from the date of this decision; and it is further

Ordered that the defendant Board of Parole is to submit to the court within sixty days of the date of this decision proposed regulations implementing the appellate procedures now being used in the pilot project on a permanent basis; and it is further

Ordered that all other requests of the petitioners be and the same are hereby denied.

---

9. H.R.1598 was introduced on January 9, 1973 in the House of Representatives and referred to the Committee on the Judiciary. This Bill is designed to establish an independent and regionalized Board of Parole and to provide for fair and equitable parole procedures.