Charles F. SOLOWAY

v.

Max D. WEGER, Supt., Federal
Prison Camp, Montgomery,
Pennsylvania, et al.

Civ. No. 74-308.

United States District Court,
M. D. Pennsylvania.

Nov. 5, 1974.

Charles F. Soloway, pro se.

S. John Cottone, U. S. Atty., Scranton, Pa., Michael McDowell, Asst. U. S. Atty., Lewisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Plaintiff, formerly an inmate at the Federal Prison Camp at Allenwood and now incarcerated at the Community Treatment Center in New York City, was sentenced on June 15, 1973, in the Eastern District of New York to two years imprisonment and five years special parole after pleading guilty to a violation of 21 U.S.C. § 841(a)(1) for having possessed, with the intent to distribute, a quantity of hashish. The sentence was made subject to the parole provisions of 18 U.S.C. § 4208(a)(2).

Subsequently, after a hearing on September 17, 1973, plaintiff was denied parole by the United States Board of Parole. The sole reason given for this denial was "Your release at this time would depreciate the seriousness of the offense committed and would thus be incompatible with the welfare of society."[1] The plaintiff contends that in de-

1. The specific language is derived from 28 C.F.R. § 2.13(b)(1), under regulations promulgated pursuant to 18 U.S.C. § 4203.

nying parole to him, the Board acted in an "arbitrary and capricious" manner,[2] thereby violating his Fifth Amendment rights to procedural due process. The initial determination, therefore, is whether petitioner's interest in prospective parole is embraced within the Fifth Amendment's concept of "liberty" so as to entitle him to certain due process safeguards.

In the recent case of Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L. Ed.2d 935, June 26, 1974, the Supreme Court of the United States determined that a prisoner's statutory right to good time is sufficiently embraced within Fifth Amendment "liberty" to entitle a prisoner to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated. The Supreme Court observed that ". . . a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State" and stressed that "(t)he touchstone of due process is protection of the individual against arbitrary action of government, Dent v. West Virginia, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889)." Access to the U. S. Parole Board for consideration of release prior to the expiration of the maximum sentence is a statutory creation of the federal government. Also in the Wolff v. McDonnell opinion is the recognition that the deprivation of good time ultimately may not have any consequence at all because ". . . it cannot be said with certainty that the actual date of parole will be affected; and if parole occurs, the extension of the maximum term resulting from loss of good time may affect only the termination of parole, and it may not even do that." As further evidence of dilution of the "*possibility* of conditional freedom with the *right* to conditional freedom" distinction, the Court emphasized that the deprivation of good time ". . . is qualitatively and quantitatively different from the revocation of parole or probation."[3] Nevertheless, the *possible* consequences such deprivation would have upon parole eligibility and extension of the maximum term were deemed sufficient to entitle the prisoner to a certain amount of due process protection.

The rationale in Wolff v. McDonnell, *supra,* gave additional support to the earlier reasoning in Johnson v. Chairman of New York State Board of Parole, 500 F.2d 925 (2d Cir. 1974), that due process in parole hearings cannot be denied on the ground that parole is a "privilege" rather than a "right" and that a prisoner's interest in prospective parole is entitled to due process protection, including a written statement of reasons when release on parole is denied. The Johnson Court held that the statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. Among the "questionable" reasons the Court referred to a policy ". . . denying parole where, because of the type of offense for which he had been committed, the prisoner has not yet

2. While the determination of parole eligibility is wholly within the discretion of the Board of Parole, United States v. Frederick, 405 F.2d 129 (3rd Cir. 1968), this broad discretion is not untempered or without parameter, United States ex rel. Harrison v. Pace, 357 F.Supp. 354 (E.D.Pa.1973), and an inmate is entitled to judicial relief if the denial of parole is arbitrary and capricious or where he has been deprived of a constitutional right. While the opinion in Scarpa v. United States Board of Parole, 477 F.2d 278 (5th Cir. 1973), on which respondent relies, holds that ". . . it is not the function of the courts to review the discretion of the Board in the denial of the application for parole . . ." it also notes that the petitioner ". . . does not allege that the Board's actions were arbitrary, fraudulent, unlawful or without reason, but only that it did not fully investigate his case."

3. In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court recognized that ". . . the traditional view of parole as a privilege rather than a vested right is no longer dispositive as to whether due process is applicable".

served an 'appropriate period' of incarceration that satisfied unarticulated and possibly inconsistent views of Board members regarding community retribution, incapacitation, or general deterrence, despite the prisoner's readiness for the community and lack of need for further institutional control . . ." The Court also articulated the Board's duty of observing meaningful criteria for determining in each case when a prisoner's release "is not incompatible with the welfare of society." Accordingly, I conclude that petitioner's right to apply for parole, and a possible early release, is a statutory creation and is sufficiently embraced within the concept of "liberty" to entitle him to a meaningful written statement as to the reasons for the denial of his application. See Craft v. Attorney General of United States, 379 F. Supp. 538 (M.D.Pa.1974).

■ As heretofore noted, the reason given by the Parole Board in denying petitioner's parole was:

"Your release at this time would depreciate the seriousness of the offense committed and is thus, incompatible with the welfare of society."

Can such a reason be so meaningful that a reviewing court can determine whether the Board has adopted and followed criteria that are appropriate, rational and consistent, and does it protect the inmate against arbitrary and capricious decisions or actions based upon impermissible considerations? Johnson v. Chairman of New York State Board of Parole, *supra*. What does " . . . depreciate the seriousness of the offense" mean? This reason has been appearing in Board denials with such frequency that it has become stereotyped and appears to be a reason without substance. Candarini v. Atty. General of U. S., 369 F.Supp. 1132 (E.D. N.Y.1974). Does it mean that the statutory offense itself is so serious that parole must be denied regardless of the facts of each case and an inmate's participation in it? I realize that the Board has adopted guidelines [4] indicating the customary range of time to be served before release for various combinations of offense severity and parole prognosis but how or whether it was applied in this case is unexplained. The only reason given relates to the seriousness of the offense and if the Board is blindly adhering to a policy that a certain minimum amount of time must be served because of the severity of the statutory offense, it may well be arbitrary and capricious, an unwarranted intrusion into the judicial sentencing process, and in excess of the Board's statutory authority. For example, a bank robbery with a weapon is listed in the "very high" category of severity of offense and even with very good parole prognosis would customarily require an inmate to serve 26 to 36 months before parole would be granted. If a defendant in an armed bank robbery, because of mitigating circumstances, has been sentenced to a term of two years, his application for parole would be a futile gesture if the Board feels that armed bank robbers should not be released prior to the expiration of 26 to 36 months. Is this what "depreciating the seriousness of the offense" means?

If, on the other hand, the Board reasoned that the circumstances of petitioner's particular offense and his involvement in it were so serious that his release would appear to diminish his culpability or depreciate the seriousness of this offense, then the Court would not attempt to second-guess that conclusion. But the difficulty is that we don't know what the Board meant because the reason given is really no reason at all. In mandating a written statement as to the evidence relied on and the reasons supporting the disciplinary action, the Supreme Court in Wolff v. McDonnell, *supra*, noted that " . . . the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where

4. 28 C.F.R. § 2.20.

fundamental constitutional rights may have been abridged, will act fairly." If access to the Board is a constitutionally recognized liberty, then we must be satisfied that the Board acted fairly, lawfully and non-arbitrarily notwithstanding the broad discretion conferred on it by statute. A meaningful statement of reasons is the least that can be furnished.

An appropriate order will issue.

## ORDER

Now, this 5th day of November, 1974, it is hereby ordered that the Board of Parole, within 20 days, shall provide the petitioner with a statement of reasons for the denial of his parole in accordance with the Memorandum of this Court this day filed.