George B. GARCIA, Plaintiff,

v.

U. S. BOARD OF PAROLE,
Defendant.

No. 75 C 1974.

United States District Court,
N. D. Illinois, E. D.

Feb. 10, 1976.

Robert S. Bailey, Chicago,, Ill., for plaintiff.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff has filed suit to challenge the United States Parole Board's (Board) denial of his application for parole. He seeks a writ of mandamus under 28 U.S.C. § 1361 ordering the Board to grant him parole or a declaratory judgment under 28 U.S.C. § 2201, declaring that the Board's denial of parole was invalid as arbitrary and capricious, and supplementary relief under 28 U.S.C. § 2202. He pleaded guilty on September 13, 1973 to an indictment charging violation of 18 U.S.C. § 371 relating to conspiracy against the United States and 26 U.S.C. § 5861 relating to the illegal possession of firearms. He was sentenced on October 31, 1973 to four years imprisonment at the Federal Correctional Institution at Sandstone, Minnesota.

After Garcia had served slightly over 14 months of his sentence, he applied for parole. His application was supported by a release plan and a progress report from the officers of the institution recommending parole upon eligibility. The *Evaluation and Recommendation for Release* section of the report reads as follows:

> George is a 33 year old Chicago resident who is serving his first period of confinement. He became involved in a serious offense due to the pressures of the competitive nature of his business. He readily admits the poor judgment that he used and offers no excuse for this behavior. During his confinement he has fully evaluated himself and gained a great deal of self-confidence. It is this writer's belief that George would not again involve himself in illegal activity. He has now served approximately fourteen months to account for his offense. Further confinement would only jeopardize his release plan. The staff recommends that he be granted parole when eligible.

On January 29, 1975, the Board denied plaintiff's application for parole and continued his sentence to expiration[1] upon the following order:

> Your offense behavior has been rated as greatest severity. You have a salient factor score of 11. Guidelines established by the Board which consider the above factors do not indicate a maximum range of months to be served before release for adult cases. You have been in custody a total of 14 months. Your release at this time would depreciate the seriousness of the offense committed and thus is incompatible with the welfare of society.

The Regional Office of the Board on February 27, 1975, and the National Appellate Board on April 4, 1975, both summarily affirmed the Board's order.

Garcia's suit challenges these decisions on the following grounds: 1) the Guidelines were improperly promulgated in violation of the Administrative Procedure Act (APA), 2) the application of the Guidelines in Garcia's case was arbitrary and capricious, thus, denying him due process, 3) the utilization and application of the Guidelines by the Board in this case violates the Constitutional concept of separation of powers because it fails to take into consideration the sentence imposed by the sentencing judge and

---

1. The effect of this decision is not only to deny the present parole application but to foreclose any further parole consideration and require plaintiff to serve his full four year sentence less possible good time allowance or a minimum of 3 years and 24 days notwithstanding his excellent institutional record and the recommendations of the institutional staff.

thereby results in an executive and administrative usurpation of judicial power.

The government has moved for summary judgment on the grounds that:

1) absent a clear and substantial showing of arbitrary action, parole decisions are not subject to Judicial Review,

2) the Board was entitled to rely on its guidelines,

3) reasons for parole denial, based on carefully constructed guidelines, are adequate.

### The Guidelines

Relying on *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974), plaintiff argues that the Board violated the APA by simply promulgating the guidelines and publishing them in the Federal Register as a *fait accompli* without soliciting and considering the views of interested persons. Further, he argues that neither plaintiff nor any other interested person was heard concerning the guidelines prior to their promulgation. Finally, he contends that the non-retroactive effect of *Pickus* does not prevent the application of that decision to this case, since the initial denial of parole occurred January 29, 1975, well after December 10, 1974, the date of final decision in *Pickus*.

The District of Columbia Circuit held in *Pickus* that the Board is an "agency" within the meaning of the APA, 5 U.S.C. § 551(1), and is neither specifically excluded nor exempted by any section of the APA. Additionally, the Court held that the rules which define parole criteria, the guidelines, are not general statements of policy, interpretative rules, or rules relating to agency organization, practice, or procedure; rather, they are "self-imposed controls over the manner and circumstances in which the agency will exercise its plenary power" having the effect of law and unreviewable except for arbitrariness. The Court con-

cluded that the Board's promulgation of parole criteria was invalid, since it failed to give advance public notice and the opportunity for interested persons to participate through oral or written submission of data or opinion pursuant to § 553. On Petition for Rehearing, the Court affirmed its decision but limited its effect as follows (p. 1114):

> Our opinion in this case did not purport to invalidate and our decision does not have the effect of invalidating past determinations of the Board upon the merits of particular cases.

It is apparent from the foregoing language that the Court did not purport to invalidate decisions made under the challenged guidelines. On the contrary, the Court recognized that such decisions fell within the realm of agency discretion and were, therefore, not reviewable in the absence of arbitrariness. The following language is illustrative (p. 1110):

> [But] we are not even reviewing the merits of the rules and standards the Board has adopted. The appellee's complaint and our consequent adjudication address themselves solely to the procedures by which those rules may be formulated.

In addition, as pointed out by Judge Decker in *Legato v. United States Board of Parole*, 75 C 1973 (N.D.Ill. decided December 17, 1975), the Board on December 31, 1974, subsequent to the *Pickus* decision and prior to the denial of parole in plaintiff's case, republished the guidelines in 39 Fed.Reg. 45223. The republication was effected on an emergency basis. In a Notice of Proposed Rulemaking dated December 20, 1974, Maurice H. Sigler, Chairman of the Board, indicated that the Board intended to adopt the guidelines and that interested persons should make written comments and suggestions relating to the proposed rules by March 3, 1975. Although the question of the extent of hearings required under the APA has not yet been resolved,[2] this case is clear-

---

**2.** The *Pickus* case is before the D. C. Circuit once again as to whether the APA and due process requirements were satisfied by the op-

portunity given to file written comments or whether public hearings were necessary.

ly in a different posture with respect to the validity of the guidelines than the *Pickus* case.

In light of our conclusion that the Board's action here must be set aside for other reasons, we need no reach the question of whether the Board's republication of the guidelines was effected pursuant to a notice of proposed rule-making and the inviting of written comments was valid. In any event, as the Court there made clear, the *Pickus* decision was not intended to apply to individual decisions made under the guidelines in the absence of allegations of arbitrariness.

### *The Parole Board's Decision*

The plaintiff argues that the Board's present use of the guidelines, which involves placing the prisoner in a specific time range to be served depending on his salient factor score and offense severity rating, violates due process under the Fifth Amendment. He contends that this is evidenced in the instant case by plaintiff's denial of parole notwithstanding the highest possible favorable salient factor score and a recommendation for immediate parole from the institution's staff. Plaintiff further contends that, far from requiring an in-depth analysis of the facts of each case, the guidelines are applied mechanically and require only a minimum of analysis.

Board decisions concerning parole have traditionally been deemed reviewable only when the Board acts capriciously or arbitrarily, or uses procedures that are manifestly unfair. *U. S. ex rel. Campbell v. Pate,* 401 F.2d 55 (7th Cir. 1968); *Scarpa v. U. S. Board of Parole,* 477 F.2d 278 (5th Cir. 1973) vacated and remanded for consideration of mootness, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973); *Legato v. U. S. Board of Parole, supra.*

In *Wiley v. United States Board of Parole,* 380 F.Supp. 1194 (M.D.Pa.1974), petitioner challenged the Federal Parole Board's guidelines as violative of due process, because they allowed inmates no access to materials and information the Board relied on to make its parole decision, no chance to rebut the information relied on by the Board or to challenge its accuracy, and no evidentiary or adversary hearing. The petitioner further argued that, upon eligibility for parole, he had a legal right to release, hence, its denial constituted resentencing by the Board. Additionally, he contended that the Board's reliance on the guidelines, particularly the seriousness of the offense and effect parole may have on deterrence of criminal conduct, usurps the role of the sentencing judge and that the seriousness of the offense cannot be relied upon as a reason for denying parole.

In dismissing the petition for writ of habeas corpus, the Court in *Wiley* recognized the broad grant of discretion inherent in 18 U.S.C. § 4203, which provides that the Board in its discretion may release a prisoner on parole if it appears there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if the Board believes such relief is compatible with the welfare of society. The Court held that, since offense severity and misconduct deterrence may be proper bases for denial of parole under § 4203, "depreciating the seriousness of the offense," which embodies those considerations, is an appropriate reason for denial of parole.

Commenting on the parole guidelines the Court said (p. 1197):

The Board's paroling policy guidelines contained in Section 2.52 and now embodied in 39 Fed.Reg. § 2.20 take into account the statutory criteria for parole consideration in the following manner. The offender characteristics or risk scale relates to the standard set forth in 18 U.S.C.A. § 4203(a) that there must be a reasonable probability that the prisoner will live and remain at liberty without violating the law. The offense severity scale relates to the standard embodied in 18 U.S.C.A. § 4203(a) that the release of an inmate will not be incompatible with the welfare of society. The consideration of

**1234**

institutional performance relates to the requirement of 18 U.S.C.A. § 4202 that the prisoner must have observed the rules of the institution in which he has been confined. It should be emphasized that these guidelines were promulgated as just that—merely *guidelines,* and the Board is free to render a decision either above or below the guideline range where in the opinion of the Board the circumstances warrant. For example, the Board may reach a decision below or above the guidelines if the prisoner has an exceptionally good or poor institutional record, or if the Board feels that the clinical parole risk prognosis is substantially better or worse than indicated by the offender characteristics score of the inmate. Thus, while the guidelines structure the discretion of the Board within the broad statutory mandate, the Board remains free to consider each individual case on its merits. The court holds that the Board's published guidelines for parole decision-making are consistent with the general statutory criteria for parole embodied in 18 U.S.C.A. §§ 4202, 4203, and hence are valid.

In the instant case, petitioner does not contend that the guidelines were misapplied in his case. See *Billiteri v. U. S. Board of Parole,* 385 F.Supp. 1217 (W.D.N.Y.1974). Rather, he argues that his denial of parole because he had not served sufficient time as prescribed by the guidelines was arbitrary, hence, not a sufficient reason within the requirements of due process. Here, plaintiff clearly challenges the very use of the guidelines by the Parole Board. We agree with Judge Sheridan in *Wiley, supra,* and Judge Newman in *Lupo v. Norton,* 371 F.Supp. 156 (D.Conn.1974), that the use of parole guidelines by the Board in granting or denying parole is a reasonable exercise of its discretion. The

Court in *Lupo* describes the efficacy of guidelines as follows (p. 162):

> With the table in use as an aid to decision, it would really be more candid for the Board, whenever it denies parole, to refer explicitly to the table in giving reasons. For example, if a prisoner had not yet been incarcerated for the length of time indicated by the table for his convicted offense and his offender characteristics, an understandable reason for parole denial would be simply a statement that the guideline time had not yet been reached and no special factors justified earlier release. Reference to the table tells the prisoner how seriously the Board regards his offense and how it rates his characteristics. Similarly, if parole were denied to a prisoner who had been in prison for the length of time indicated by the table, an understandable reason would specify what special factors were thought to justify confinement beyond the guideline.

Here, at the date of the Board's decision, the petitioner had not served more than the 26 months minimum period suggested by the guidelines.[3] He had served 14 months of his sentence. Because the Board considers offender characteristics (salient factor score) as well as offense severity and institutional performance in placing a prisoner in the guideline table, it cannot be held that parole denial predicated on the use of the guidelines is necessarily arbitrary or an abuse of the broad discretion afforded the Board by 18 U.S.C. §§ 4202, 4203.

It is true, however, that petitioner's offender characteristics and his institutional performance were both excellent as reflected in the evaluation and recommendations of the institutional staff. In order to determine whether these special circumstances require a review of the Board's determination in petitioner's case, it is necessary to consider recent

3. The guidelines provide that a prisoner with plaintiff's offense and offender characteristics serve at least 26 months. It should be noted that, as a result of the Board's continuing plaintiff's sentence to expiration, he will serve at least 3 years and 24 days well beyond the guidelines minimum.

authority on the question of what process is due the inmate being denied parole release.[4]

█ Courts, including the Seventh Circuit, have recently held that because an inmate's interest in prospective parole, "conditional liberty", is one that is entitled to due process protection, a prisoner is entitled to reasons for the denial of parole. *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975); *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir. 1975); *Childs v. United States Board of Parole,* 167 U.S. App.D.C. 268, 511 F.2d 1270 (1974). As pointed out by the Second Circuit in *Johnson, supra,* the reasons should serve to permit a reviewing Court to determine whether the Board has adopted and followed criteria that are appropriate, rational, and consistent, as well as to protect the inmate against arbitrary and capricious decisions or actions based upon impermissible considerations. Judicial review, the Court noted, should be available where the Board has arrogated to itself decisions which should be made by the legislature, when the Board's decision is inconsistent with statutory directives, when improper criteria are used, or when its decision has no basis in the prisoner file. On the other hand, the Court explained the "reasons" requirement not only protects the inmate from invidious conduct on the part of the Board, it also facilitates his rehabilitation by relieving his frustrations and letting him know the ways in which he may improve his institutional behavior in order to earn an early release.

The District of Columbia Circuit in *Childs v. United States Board of Parole, supra,* quoted from *King v. United States,* 492 F.2d 1337 (7th Cir. 1974) in holding that the statement of reasons serves a rehabilitation function (p. 1282):

Giving reasons for denying parole is desirable for both rehabilitational and legal reasons. A prisoner may feel less resentful of a negative decision if he knows the reasons for it, and in planning his activities in the institution he ought to understand clearly what will help him to obtain an early parole. When the nature of his crime is such that early parole is not likely in any event, he should be protected from unrealistic hopes that can only lead to disappointment and bitterness. All this is the job of a prison counselor in any case, but Parole Board can make that job much easier by formally stating its reasons.

█ The guidelines serve to inform the inmate of the grounds on which the Board's decision is made. Where the denial is based solely on the guidelines, a statement of factors leading to the inmate's placement within the table would appear to be sufficient. If the decision is one to extend a prisoner's incarceration beyond the time called for in the guidelines, an additional statement of reasons would be necessary. In cases such as the one before us, where a decision which reduces the time to be served to some period below the guideline range appears to be warranted, a statement of the reasons for the decision not to reduce would be necessary. In this case the reason given was: "Your release at this time would depreciate the seriousness of the offense committed and thus is incompatible with the welfare of society."

█ We cannot, based on the foregoing statement, determine whether considerations relating to petitioner's institutional adjustment as reflected in the staff's recommendation were taken into account. If they were, the Board has given us no indication of how these factors figured into their final determination denying parole and continuing his

---

**4.** Prior to the recent cases requiring a due process statement of the reasons for parole release denial, judicial review of parole decisions was limited to cases where facts underlying the parole decision had been arbitrarily or capriciously determined, *see United States ex rel. Campbell v. Pate, supra,* or where the Board's actions were arbitrary, fraudulent, unlawful, or without reason, *see Scarpa v. Board of Parole, supra.*

sentence to expiration. So far as can be determined, the Board gave no consideration whatever to his excellent institutional record, his release plan or the recommendations of his institutional officers.

The Second Circuit in *Johnson* offered several examples of impermissible policies in Parole Board decision-making. One such example was the denial of parole where (p. 931):

> because of the type of offense for which he had been committed, the prisoner has not yet served an "appropriate period" of incarceration that satisfies unarticulated and possibly inconsistent views of Board members regarding community retribution, incapacitation, or general deterrence, despite the prisoner's readiness for the community and lack of need for further institutional control, . . . .

The District Court in *Soloway v. Weger*, 389 F.Supp. 409 (M.D.Pa.1974) suggested, and we agree, that the arbitrary placement of inmates in particular guideline ranges without regard to institutional adjustment may constitute an arrogation of major policy decisions properly left to the legislature. In this connection, Congress has specifically provided, 18 U.S.C. § 4202, that:

> A federal prisoner, . . . whose record shows that he has observed the rules of the institution where he is confined, may be released on parole after serving one-third of such term or terms . . . .

The Seventh Circuit in *Richerson, supra*, recently surveyed the federal cases which have dealt with the sufficiency of depreciating the seriousness of the offense as a reason for denying parole. In that case, petitioner, an inmate at the Sheridan Correctional Center, Sheridan, Illinois, was denied parole by the Illinois Parole and Pardon Board for the following reason (p. 801):

> It is the opinion of the Board that an early parole on this offense where police officers were wounded while doing their duty, would deprecate the seriousness of such an offense and would

not deter others from committing such crimes. The Board recognizes your excellent institutional adjustment and well conceived parole plans and recommends that you continue in your excellent adjustment in the institution.

In the first part of its holding the Court, citing *Johnson, supra, Childs, supra,* and *King, supra,* concluded that minimum due process requires that reasons be given for the denial of parole release. Even though the case involved a state prisoner, the Court relied upon the Federal Parole Statute, 18 U.S.C. § 4203(a), the Rules of the United States Board of Parole, and federal cases which had addressed the sufficiency of depreciating the seriousness of the offense as a reason for denying parole.

The Court first considered district court cases which had rejected the reasons proffered by the Parole Board because of the Board's failure to follow its own parole guidelines. This group included: 1) *Billiteri v. United States Board of Parole, supra,* where the Board misapprehended the "seriousness of the inmate's offense", designating it as extortion when his conviction was for conspiracy only; 2) *Lupo v. Norton, supra; Grasso v. Norton,* 371 F.Supp. 171 (D.Conn.1974) and *Diaz v. Norton,* 376 F.Supp. 112 (D.Conn.1974), which were all decided on the ground that the Board failed to follow its own rules and guidelines; 3) *Battle v. Norton,* 365 F.Supp. 925 (D.Conn.1973) which did not reach the question of whether the seriousness of the offense could be the exclusive reason for parole denial, because it appeared that the Board had considered other factors and followed its guidelines. These cases were deemed to be of no assistance in that the Illinois Board had followed its guidelines.

The Court then considered *Soloway, supra; Candarini v. Attorney General of the United States,* 369 F.Supp. 1132 (E.D.N.Y.1974), and *Craft v. Attorney General of the United States,* 379 F.Supp. 538 (M.D.Pa.1974). In *Soloway,* the Court questioned whether "seriousness of the offense" meant that the stat-

utory offense itself is so serious that parole must be denied regardless of the facts of each case and an inmate's participation in it or that the circumstances of an inmate's particular offense and his involvement in it were so serious that his release would appear to diminish his culpability or deprecate the seriousness of the particular offense. Since the statement could have had the first meaning, the Court ordered the Board to provide a more meaningful statement of reasons. The Court noted that, if the statement had the second meaning, it would not have questioned the Board's conclusion. In *Candarini* and *Craft,* the responses of the courts to the "seriousness of the offense" reason were, respectively, that "mere pro forma language . . . will not suffice" and that the reason given "was tantamount to no reason and afforded the petitioner none of the safeguards."

The Seventh Circuit proceeded to distinguish the case before it from the foregoing three cases in that the state prisoner had been given two additional facts. He was told that it was the seriousness of his commission of the particular crime of attempted murder and not attempted murder generally, which was delaying his parole. He was also told to continue his excellent institutional adjustment and well-conceived parole plans, a recommendation which should have been encouraging.

After discussing three recent district court cases where the issue of adequacy of reasons was squarely presented, the Court held that this authority was not completely persuasive and proceeded to do an independent analysis. The three recent district court decisions discussed were *Wiley v. United States Board of Parole, supra; de Vyver v. Warden,* 388 F.Supp. 1213 (M.D.Pa.1974), and *Franklin v. Shields,* 399 F.Supp. 309 (W.D.Va. 1975). *Wiley* held that "depreciating the seriousness of the offense" was a sufficient reason, because it was relevant to whether the offender's release would be

compatible with the welfare of society. It also held that the prisoner is not entitled, in addition to reasons, to a detailed written statement of information used by the Board in reaching its decision. In *de Vyver,* "depreciating the seriousness of the offense" was not the only reason given by the Board; it also emphasized petitioner's past criminal patterns and his need of additional institutional adjustment. In *Franklin,* the reasons held sufficient included specific comments about the past history and institutional performance of the four petitioners.

Quoting from its own opinion in *King v. United States,* 492 F.2d 1337 (7th Cir. 1974), the Court said (p. 804):

> [T]he reasons must be reasonably specific. It does no good to tell a prisoner he is being denied parole because he is a danger to society unless he is told why he is so regarded, and whether there is anything he can do to convince the Board otherwise.

The Court concluded that the brief statement required under the APA for a federal agency is applicable to state parole boards. The following test taken from *Johnson, supra,* was adopted by the Court (p. 804):

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision . . . and the essential facts upon which the Board's inferences are based . . . .

The Court held that under this test the Illinois Board's statement of reasons was sufficient. It declined to decide whether the statutory reasons standing alone would be sufficient.[5]

5. The Illinois Unified Code of Corrections, effective January 1, 1973, provides that the Pa-

role and Pardon Board in the Illinois Department of Corrections

The reasons given by the Board in the instant case are not sufficient to enable this Court to determine whether parole has been denied plaintiff for an impermissible reason. Notwithstanding the excellent offender characteristics and institutional record and recommendation of plaintiff, he was denied parole on the basis of the guidelines and the "seriousness of the offense." Neither the plaintiff nor the Court knows how or whether the Board considered his institutional record or the evaluation and recommendation from the institutional staff. Since the sentence was continued to expiration, the maximum plaintiff could be required to serve, it would appear that no consideration was given to these factors and the Board simply blindly followed the guidelines. Such an inadequate statement serves neither the purposes of review nor rehabilitation. For purposes of review, it is impossible to determine whether the guidelines were applied arbitrarily or the Board considered all factors including institutional adjustment before arriving at its conclusion, although, as previously indicated, it appears that it did not. The prisoner is given no feedback on his behavioral progress since being admitted to prison. As a result, the purpose of rehabilitation is not served by the instant statement. In fact, the institutional recommendation in petitioner's case, after specifying a number of positive reasons for his release, stated "Further confinement would only jeopardize his release plan," indicating that denial of parole will have an adverse effect on his rehabilitation.

■ We can only conclude that, notwithstanding the Congressional mandate that institutional performance be considered in determining whether or not to grant parole, the Board here arbitrarily and capriciously denied parole solely on

the basis of the "seriousness of the offense" without any regard to the various other factors necessary to a rational decision. At the least, a more meaningful statement of the "depreciating the seriousness of the offense reason" is required. We agree with Judge Nealon in *Soloway,* who said (p. 411):

I realize that the Board has adopted guidelines (footnote omitted) indicating the customary range of time to be served before release for various combinations of offense severity and parole prognosis but how or whether it was applied in this case is unexplained. The only reason given relates to the seriousness of the offense and if the Board is blindly adhering to a policy that a certain minimum amount of time must be served because of the severity of the statutory offense, it may well be arbitrary and capricious, an unwarranted intrusion into the judicial sentencing process, and in excess of the Board's statutory authority. For example, a bank robbery with a weapon is listed in the "very high" category of severity of offense and even with very good parole prognosis would customarily require an inmate to serve 26 to 36 months before parole would be granted. If a defendant in an armed bank robbery, because of mitigating circumstances, has been sentenced to a term of two years, his application for parole would be a futile gesture if the Board feels that armed bank robbers should not be released prior to the expiration of 26 to 36 months. Is this what "depreciating the seriousness of the offense" means?

*Usurpation of The Sentencing Function*

■ Plaintiff also challenges the guidelines on the ground that, by failing to take into consideration the sentence imposed, the Board has substituted its

. . . shall not parole a person eligible for parole if it determines that:

(1) there is a substantial risk that he will not conform to reasonable conditions of parole; or

(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or

(3) his release would have a substantially adverse effect on institutional discipline. Ill. Rev.Stats. ch. 38, § 1003–3–5(c).

judgment as to the proper sentence for that of the sentencing judge. This, of course, is exactly what the Board intended to do in adopting the guidelines as a number of its members have candidly admitted. In an effort to achieve more uniformity in sentencing, the Board has determined that it will not grant parole where it believes the judge has "undersentenced" a particular defendant even though there may be sound and compelling reasons for the sentence imposed such as the defendant's cooperation with law enforcement officials, testifying for the prosecution, the impact of the sentence on innocent persons, the degree of his participation in the particular crime, and a host of other individual factors which are peculiarly within the knowledge of the sentencing judge and beyond the scope of the guidelines and the knowledge of the Board. The result of blind adherence to the guidelines may very well result in more uniformity but more injustice as well if judges give the Board broad discretion as to parole.

The courts, however, have all the powers necessary to protect against any usurpation of the sentencing function by the Board. As we have previously noted in *United States of America v. Randle,* 408 F.Supp. 5 (Decided October 28, 1975), the effective way for a judge currently to exercise his sentencing discretion is to impose the sentence which, less allowable good time, results in the period of incarceration which the sentencing judge believes is proper whether or not it falls within the guidelines and permit the Board to exercise its discretion but not usurp the sentencing judge's function. Our historical assumption that the Board will give meaningful parole consideration to a defendant with a good institutional record at the expiration of one-third of his sentence is, as this case clearly demonstrates, no longer a reality notwithstanding the provisions of 18 U.S.C. § 4202, unless the original sentence was so long that the one-third point falls within the guidelines. Individual parole consideration of each case within the time frame fixed by the sentencing judge is gone, replaced by the guidelines and their relatively rigid application. Accordingly, any exercise of discretion or discrimination in sentencing or incarceration now rests primarily in the sentencing judge.

It does not follow, however, that the guidelines are, therefore an invalid usurpation of judicial power. As Judge Decker held in *Legato, supra,* the use of paroling guidelines in making parole release determinations is not a usurpation *per se* of the sentencing function of a judge. Sentencing entitles the prisoner to no more than the establishment of the earliest period of parole eligibility and the maximum period of confinement. Within those perimeters, the Board clearly has broad discretion subject only to the requirements that it not exercise its discretion arbitrarily or capriciously and that it give sufficiently clear reasons for its action so that the reasonableness of its decisions can be evaluated on review. The instant case involves no usurpation of the sentencing function.

## CONCLUSION

We conclude that the Board's denial of parole in the instant case was arbitrary and capricious, since no reason was given other than the conclusory and perfunctory statement that release would depreciate the seriousness of the offense and would be incompatible with the welfare of society. Such boilerplate reasons could easily be used to cloak completely arbitrary and capricious action. Given the plaintiff's outstanding institutional record for 14 months, the strong recommendation of the prison staff, the favorable release plan and the opinion of the prison advisor that further incarceration would be counterproductive, such a cursory rejection is obviously inadequate.

Plaintiff's application for a writ of mandamus under 28 U.S.C. § 1361 will be denied. A judgment under 28 U.S.C. § 2201 declaring the Board's action invalid will enter and the order denying parole set aside. A new hearing will be ordered pursuant to 28 U.S.C. § 2202.

The Board shall set forth with reasonable specificity the reasons for its action after such a hearing. An appropriate order will enter.