Paul H. NUNLEY, # 84501–132,
Petitioner,

v.

U. S. BOARD OF PAROLES and Irl Day, Warden, Respondents.

No. CIV–77–0084–D.

United States District Court,
W. D. Oklahoma.

April 4, 1977.

Paul H. Nunley, pro se.

David L. Russell, U. S. Atty. by William S. Price, Asst. U. S. Atty., Oklahoma City, Okl., for respondents.

## ORDER

DAUGHERTY, Chief Judge.

This is a proceeding for writ of habeas corpus by a federal prisoner at the Federal Correctional Institution, El Reno, Oklahoma, who claims that he is entitled to his immediate release or a new parole hearing because of constitutional errors in the denial of a parole.

The following facts are not in dispute: In 1959 upon his guilty pleas to five counts of narcotics violations this court imposed sentences aggregating 30 years imprisonment. After successful post conviction proceedings resulting in these sentences being vacated, petitioner was resentenced on March 7, 1968, upon his guilty plea to a single count, to 18 years imprisonment. The other counts of the indictment were dismissed. The petitioner was released on January 2, 1970, from the United States Penitentiary at Leavenworth, Kansas, to paroled supervision in the Western District of Oklahoma. While on parole he committed the crimes of Assault and Battery With a Dangerous Weapon; Assault and Battery With a Deadly Weapon With Intent to Kill; and Carrying a Concealed Weapon After Former Conviction of a Felony, and was duly charged with these offenses in the District Court of Oklahoma County. On February 9, 1971, the petitioner appeared before the court with his attorney and plead guilty to each of the three charges and received concurrent sentences of eight and one-half years imprisonment. The United States Board of Parole issued a Warrant for his arrest for these parole violations on February 18, 1971, and the Warrant was lodged as a Detainer at the Oklahoma State Penitentiary. The petitioner was subsequently released from state custody on March 25, 1975, and he was immediately taken into custody by federal authorities. A parole revocation hearing was afforded to the petitioner on June 11, 1975 at the United States Penitentiary at Leavenworth, Kansas. By Notice of Action dated June 23, 1975 the petitioner was advised that his parole was revoked and that his case was continued for further consideration in April, 1976. The reason for a denial of parole at that time was stated to be:

"Your release at this time would depreciate the seriousness of your mandatory release violation and promote disrespect for the mandatory release process. There does not appear to be a reasonable probability at this time that you would conform to the conditions of mandatory release, due to the fact that you did have in your possession a pistol and did not have permission to have same. There does not appear to be a reasonable probability at this time that you would live at liberty without violating the law because you were convicted of three very serious charges while under mandatory release supervision."

There was no appeal from this decision.

In April, 1976, the petitioner met again with parole examiners at the United States Penitentiary at Leavenworth, Kansas, and thereafter on April 20, 1976, was notified in writing that his case was continued for institutional review hearing in April 1979 with the following reasons given for the continuance:

"You have a history of assaultive behavior which demonstrates potential for future assaultive behavior. There is not a reasonable probability at this time that you would live at liberty without violating the law.

Board policy prohibits a continuance of more than thirty-six months without review. Your continuance has been limited by this policy."

The petitioner's Regional Appeal was then denied on May 11, 1976, and on June 23,

1976, the National Appellate Board likewise affirmed the previous decision.

■ The petitioner alleges that the panel in 1975 verbally assured him that he would be paroled at his next review. No statement was made in the Summary by the examiners that they felt the petitioner should be paroled at his next hearing scheduled for April, 1976. Assuming, however, the truth of petitioner's allegations they do not entitle him to relief. The informal encouragement which he claims he received could not have the stature of a formal parole grant. Yet in *McIntosh v. Woodward,* 514 F.2d 95 (CA5 1975) the petitioner had been notified on July 26, 1974, that he would be paroled with a release date fixed for August 29, 1974. Apparently as a result of protests the Board later reconsidered and after hearing rescinded the earlier order. The court refused to disturb the action of the Parole Board and held that the petitioner was not entitled to the due process parole revocation procedures. In *Sexton v. Wise,* 494 F.2d 1176 (CA5 1974) the petitioner had been given a future parole date which was later summarily rescinded and the court held that there was no denial of due process. In *McGee v. Aaron,* 523 F.2d 825 (CA7 1975), the court found no basis for relief where the petitioner had received a tentative parole date from the hearing examiners and the National Appellate Board for adequate reasons reversed that decision and denied parole with continuance to expiration. The court rejected the suggestion that the denial of a parole under the circumstances constituted cruel and unusual punishment.

Whether, and to what extent, if any, procedural due process applies to parole release hearings has not yet been finally resolved. A conflict has developed among the circuits. See *Scott v. Kentucky Board of Parole,* No. 74–1899 (unpublished Order January 15, 1975) in which the Sixth Circuit held that the requirements of due process are not applicable to parole release hearings, vacated and remanded to consider mootness 429 U.S. 60, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976); *Brown v. Lundgren,* 528 F.2d 1050 (CA5 1976) (due process does not apply); *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (CA7 1975) (due process applies to the extent that a written statement of reasons must be given for denial of parole), cert. denied, 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976); *Bradford v. Weinstein,* 519 F.2d 728 (CA4 1974) (due process applies), vacated as moot 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974) (due process applies to the extent that reasons must be given); *Johnson v. Chairman, New York State Board of Parole,* 500 F.2d 925 (CA2 1974) (due process applies to the extent that reasons must be given), vacated as moot sub nom. *Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974); *Scarpa v. United States Board of Parole,* 477 F.2d 278 (CA5 1973) (due process does not apply), vacated and remanded to consider mootness, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973), dismissed as moot 501 F.2d 992; *Menechino v. Oswald,* 430 F.2d 403 (CA2 1970) (due process does not apply to parole hearing; questioned in *Johnson,* supra), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971); *Burton v. Ciccone,* 484 F.2d 1322 (CA8 1973) (parole board must follow its own rules, but implicitly holding that due process does not apply).

Our circuit has indicated that a prisoner may be entitled to a "modicum of due process" in a hearing to consider his release on parole and that in any event under the Administrative Procedure Act he is entitled to a "brief statement" of the reasons for the actions of the Board. *Mower v. Britton,* 504 F.2d 396 (CA10 1974).

■ The petitioner here labels the statement provided by the Board for its action in April, 1976, as a "boiler plate reason" which is inadequate to meet either statutory or constitutional standards. A "boiler plate reason" is a standard generalized statement unsupported by any specific underlying facts related to the particular individual. In the parole context the courts have characterized as a "boiler plate rea-

son" a statement by the Parole Board to a prisoner that his release would depreciate the seriousness of the offense and thus be incompatible with the welfare of society. *Lupo v. Norton,* 371 F.Supp. 156 (D.Conn. 1974); *Soloway v. Weger,* 389 F.Supp. 409 (N.D.Pa.1974); *Billiteri v. U. S. Board of Parole,* 385 F.Supp. 1217 (W.D.N.Y.1974); *Craft v. Attorney General of the United States,* 379 F.Supp. 538 (M.D.Pa.1974); *Canderini v. Attorney General of the United States,* 369 F.Supp. 1132 (E.D.N.Y.1974). This is not petitioner's case. It is obvious from the statement by the Board that the basis for its action is the petitioner's prior criminal record. There can be no doubt that it was so understood by the petitioner as in this proceeding he also is contending that it constituted "double jeopardy" for the Board to take into consideration his long and lamentable history of unlawful behavior. The statement by the Board was meaningful and easily understandable. The reasons are not legally insufficient simply because the prisoner disagrees or is dissatisfied with the statement provided. *Barr v. United States,* 415 F.Supp. 990 (W.D.Okl. 1976).

■■ The petitioner's self-contradictory claim of double jeopardy is likewise without merit. The doctrine of double jeopardy, as developed under the common law or the Constitution, has strict application to criminal prosecutions only. *United States v. Smith,* 288 F.Supp. 394 (D.C.Puerto Rico 1968). It does not apply to other than judicial proceedings. *Daigle v. Hall,* 387 F.Supp. 652 (D.Mass.1975). In *Roach v. Board of Pardons & Parole, State of Arkansas,* 503 F.2d 1367, 1368 (CA8 1974) a prison inmate argued that to base denial of parole on his prior criminal record was to impose additional punishment for his prior offense(s) in violation of his constitutional right against double jeopardy and the court in rebutting his argument stated:

"[P]arole is a supervised release from incarceration prior to the termination of sentence. Conversely, the denial of parole has the effect of perpetuating the status quo, i. e., continued incarceration during the term of sentence. Therefore, such denial does not give rise to multiple punishment for the same offense. *United ed States ex rel. Jacobs v. Barc,* 141 F.2d 480 (6th Cir. 1944), cert. denied, 322 U.S. 751, 64 S.Ct. 1262, 88 L.Ed. 1581; *Carlisle v. Bensinger,* 355 F.Supp. 1359, 1362 (D.C. Ill.1973).

A parole board is an independent statutory agency delegated broad discretionary powers in parole eligibility determinations. In making such determinations, the parole board may properly consider the length and seriousness of an inmate's prior criminal record.

Prior criminal convictions are one of many factors a parole board should consider in its review to determine whether a prospective parolee will remain at liberty without violating the law, and whether such release will be compatible with the welfare of society."

■ The petitioner also complains that a progress report prepared by his casemanager for consideration by the Examiner Panel in April, 1976, was not furnished to him until the end of March. He claims that under the provisions of Title 18, United States Code Section 4208(b) he was entitled to a copy at least 30 days before his appearance before the Panel. The statutory requirement relied upon by the petitioner is a part of the New Parole Commission and Reorganization Act which became effective May 14, 1976 and therefore was not applicable to the petitioner's earlier hearing. The petitioner had no constitutional right to discovery of the Parole Board's file. *Billiteri v. U. S. Board of Parole,* 541 F.2d 938 (CA2 1976); *Barr v. United States,* supra.

■ The petitioner's general conclusory averments of bias and prejudice by the April, 1976 Panel amount to no more than an expression of the petitioner's personal disappointment and discontent with the Board's exercise of its discretion. By law the Congress of the United States has conferred upon the Parole Board now Commission the sole power to grant or deny parole. 18 U.S.C. § 4203. As pointed out in *Brest v. Ciccone,* 371 F.2d 981, 982–983 (CA8 1967):

"The courts are without power to grant a parole or judicially determine eligibility for parole. Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of applications for parole, or to repass on the credibility of reports and information received by the board in making its determination."

The courts do not purport to control the discretion of the Board. *Mower v. Britton,* supra. The court can only grant relief in a habeas corpus proceeding by a prisoner complaining of a denial of a parole when it appears that there has been an abuse of discretion on the part of the Board resulting in an abridgement of the petitioner's constitutional rights. *Billiteri v. U. S. Board of Parole,* 541 F.2d 938 (CA2 1976). The limited scope of inquiry was emphasized by the court in *Zannino v. Arnold,* 531 F.2d 687, 691 (CA3 1976):

"Congress has invested the Parole Board with broad discretion. The district court may not substitute its judgment for that of the Board, and, therefore, the scope of its review is very limited. In this case, the district court must determine whether the information relied on by the Board to support its admittedly adequate reasons was sufficient to provide a factual basis for those reasons. The inquiry is not whether the Board is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons."

Here the petitioner's file considered by the Commission included an unchallenged record of serious criminal misbehavior extending back to 1947. It clearly is not an abuse of discretion to deny parole to a prisoner who has an extensive criminal record and prior parole violations. *Calabro v. U. S. Board of Parole,* 525 F.2d 660 (CA5 1975).

Accordingly, the Petition for Writ of Habeas Corpus will be denied.

IT IS SO ORDERED.